[Crim. No. 41643. Second Dist., Div. One. Sept. 12, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO MENCHACA, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Patra Woolum, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack, Susan Lee Frierson and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

SPENCER, P. J.—

INTRODUCTION

Defendant Francisco Menchaca appeals from a judgment of conviction entered after a jury trial. Prior to trial, the People's motion to admit in evidence certain out-of-court statements of the victim under the recent complaint doctrine was granted and defendant's motion to suppress his out-of-court admissions was denied. The jury found defendant guilty of burglary (Pen. Code, § 459) and rape (Pen. Code, § 261, subd. (2)), after which defendant was sentenced to state prison for the term prescribed by law.

PROCEDURAL BACKGROUND

Defendant is a Spanish-speaking Mexican national; he is illiterate and neither speaks nor understands English. At the preliminary hearing on September 9, 1981, interpreter Maria Bowen was sworn for the purpose of interpreting the testimony of the Spanish-speaking complaining witness; no separate interpreter was present at the defense table. On September 23, 1981, interpreter Peter Lopez was sworn, after which defendant waived arraignment and entered a plea of not guilty. A pretrial conference was held on October 26, 1981, at which time interpreter Peter Lopez was sworn and the matter was set for trial. Thereafter, on November 2, November 5 and November 12, the matter was continued; no interpreter was present on these occasions.

At 9 a.m. on November 16, 1981, the matter was declared ready for trial. In that no interpreter was present, the matter was held until 11 a.m., at which time it was once again called. Interpreter Maria Bowen was sworn, after which the matter was trailed until 9 a.m. of the following day. On November 17, the trial court assigned the matter for trial and found no court then available; interpreter Maria Bowen, previously sworn, was present.

Trial commenced on November 18, 1981, with interpreter Maria Bowen present. On this occasion, the trial court granted defendant's motion to provide a separate interpreter for non-English-speaking witnesses. On No-

vember 19, with interpreter Maria Bowen present, the trial court heard defendant's motion to suppress his out-of-court admissions. In the course of the hearing, Maria Bowen was sworn as a witness and testified to the meaning of the Spanish words, "Bueno, si"; thereafter, trial continued.

When Spanish-speaking witness, Geronimo De Haro, was sworn, no witness interpreter was available; accordingly, over defendant's objection, Maria Bowen was sworn as a witness interpreter. In an effort to determine whether defendant understood the witness, defense counsel utilized investigator James Henry as an interpreter. Mr. Henry was unsworn. Approximately one-half hour later, well into the direct examination of the witness, the scheduled witness interpreter, Alicia Luper, arrived and was sworn; Maria Bowen resumed interpreting for defendant. Thereafter, at all times in the presentation of the People's case during which a non-English-speaking witness was testifying, a separate witness interpreter was utilized. During the presentation of the defense, defendant waived a separate witness interpreter for the testimony of Anastasia Munoz Rosales, defendant's wife.

### STATEMENT OF FACTS

Inasmuch as defendant does not challenge the sufficiency of the evidence, we briefly summarize the facts as follows:

On August 8, 1981, between 8 and 8:30 p.m., Rosa R., who was employed as a general household helper by the De Haro family, asked to use the telephone in Geronimo De Haro's ground floor room. At the time, Geronimo De Haro was playing pool in the adjacent pool room with defendant and Filiberto Nunez (Nunez). After using the telephone, Rosa retired to her nearby room for the night.

Later, Rosa was awakened by a man's voice outside her door; she recognized the man as Nunez. He asked to come in, offered her money, and said he would pay for a hotel. When Rosa refused, Nunez began to apologize. Shortly, defendant fetched Nunez and Rosa thereafter heard two automobiles drive away. She fell asleep once again.

Some time later, Rosa was awakened by someone pulling off her bed covers. Unable to see in the darkness, she asked who it was, but received no response. The man placed his hand over Rosa's mouth, after which she became frightened. Trying to rise, she struck her head, whereupon the naked man fell on top of her. After several minutes of struggle, during which the man struck her, he removed her underwear and forcibly engaged in sexual intercourse. When the man finished he rose and turned on the light, at which point she recognized him as defendant.

After defendant left her room, Rosa dressed, then spent the remainder of the night awake, frightened and tearful. Her underwear had been torn, her leg was bruised and she had a lump on her head. She was afraid to report the incident to her employers or to the police, due to her status as an illegal alien. However, approximately 10 days later, after confronting defendant once again in the pool room, she told Geronimo De Haro. Approximately two weeks later, Rosa summoned the courage to tell Mrs. De Haro and to speak to the police.

The defense was one of consent and nonviolent character.

## CONTENTIONS

### I

Defendant contends he was denied his constitutional right to an interpreter throughout the proceedings and thereby denied due process of law.

### II

Defendant further contends the trial court erred in finding a knowing and intelligent waiver of his *Miranda* rights.

### III

Finally, defendant asserts three instances of evidentiary error:

A. Rosa's out-of-court statements to Geronimo De Haro were inadmissible as a recent complaint of a sexual offense;

B. Rosa's testimony regarding her out-of-court exchange with Nunez was inadmissible hearsay; and

C. Rosa's testimony as to why she did not relate the incident to defendant's wife was improper opinion evidence.

## DISCUSSION

We find merit in defendant's contention he was denied his constitutional right to an interpreter throughout the proceedings and thereby denied due process of law. Article I, section 14 of the California Constitution provides in pertinent part: "A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." The essence of the issue presented is whether the presence of an

interpreter who is facilitating communication between witnesses testifying in defendant's native language, counsel and the trial court fulfills the constitutional mandate; we think not.

We take judicial notice that when a witness interpreter is utilized, the interpreter and witness are speaking to each other at relatively close range, after which the interpreter translates for the benefit of counsel and the trial court. Under such circumstances, it cannot be assumed a defendant clearly hears and understands the question and answer exchange in Spanish. Indeed, during those portions of Geronimo De Haro's direct examination at trial which were handicapped by the presence of a witness interpreter only, defense counsel expressed considerable apprehension on this point. Moreover, it is manifest from the record that on occasion, counsel was unable to understand the initial English translation of a witness's answer.

Even if we were to assume defendant *could* hear and understand the answers given in Spanish by the complaining witness at the preliminary hearing and by Geronimo De Haro at trial, because their voices carried or were amplified, it is not thereby established that he spontaneously understood the *testimony.* As is generally the case, the record is replete with monosyllabic witness answers. Without a clear understanding of the questions, such testimony is essentially meaningless.

Defendant's spontaneous understanding of the testimony has vital importance in determining whether he was denied due process of law. As the Arizona Supreme Court noted in *State* v. *Rios* (1975) 112 Ariz. 143 [539 P.2d 900, 901]: " ' "A defendant's inability to spontaneously understand testimony being given would undoubtedly limit his attorney's effectiveness, especially on cross-examination. It would be as though a defendant were forced to observe the proceedings from a soundproof booth or seated out of hearing at the rear of the courtroom, being able to observe but not comprehend the criminal processes whereby the state had put his freedom in jeopardy. Such a trial comes close to being an invective against an insensible object, possibly infringing upon the accused's basic "right to be present in the courtroom at every stage of his trial." ' [citations omitted] *State* v. *Natividad,* 111 Ariz. at 194, 526 P.2d at 733." *People* v. *Chavez* (1981) 124 Cal.App.3d 215, 226 [177 Cal.Rptr. 306] cites *Rios* approvingly in holding that a defendant is denied his constitutional right to an interpreter when his attorney is forced to act as one. While the impairment of defense counsel's effectiveness is far more obvious and grave in those circumstances, the consequences to the defendant are the same whenever his ability to spontaneously understand testimony is impaired. Accordingly, we conclude that a third party witness interpreter cannot effectively discharge the translating responsibilities owed to a defendant.

Moreover, a defendant's "presence," his sensibility and comprehension of the criminal trial process, is impaired in other ways by sole reliance on a witness interpreter. When acting in that capacity, an interpreter does not provide the defendant with translations of the court's rulings or of open-court colloquy between the bench and counsel. These are integral parts of "the proceedings."

■ A preliminary hearing is a vital stage in criminal proceedings, at which a defendant's presence is mandatory. (Pen. Code, § 977; *Coleman v. Alabama* (1970) 399 U.S. 1, 7 [26 L.Ed.2d 387, 395, 90 S.Ct. 1999].) The devastating prejudice to counsel's effectiveness from defendant's impaired understanding is obvious at the preliminary hearing held in the instant matter. Defendant was indeed reduced to an insensible object, unable to assist or even communicate with counsel. That lack is so fundamental as to result in a denial of due process. Hence, the issue is not, as the People assert, waived on appeal by a failure to raise it below. (See *People* v. *Mills* (1978) 81 Cal.App.3d 171, 176 [146 Cal.Rptr. 411].)

Further, the fundamental and gross nature of the defect was no less during portions of the trial. Defense counsel's desperation measure of attempting to utilize Mr. Henry, the district attorney's investigator, as a stop-gap interpreter neither served to waive defendant's right nor to cure the defect. ■ Mr. Henry was unsworn; Evidence Code sections 750 and 751 require the administration of a particular oath to any individual who is to serve as an interpreter. The requirements are mandatory in a criminal proceeding; thus, the failure to administer such an oath is fatal to the constitutional effectiveness of an interpreter. (*People* v. *Chavez, supra,* 124 Cal.App.3d 215, 225.)

■ Finally, the trial court's willingness to permit defense counsel to interrupt the proceedings should he desire to communicate with defendant was inadequate to fulfill the constitutional mandate. It is the *defendant's* ability to instantaneously communicate with counsel upon a spontaneous understanding of the testimony and the proceedings which must be protected. In our view, nothing short of a sworn interpreter at defendant's elbow will suffice. In sum, defendant was denied his constitutional right to an interpreter "throughout the proceedings."

In view of the conclusion we reach, we need not address defendant's remaining contentions which are, in any event, meritless.

The judgment is reversed.

Lillie, J., and Dalsimer, J., concurred.

A petition for a rehearing was denied October 13, 1983, and respondent's petition for a hearing by the Supreme Court was denied November 10, 1983.