[Crim. No. 41525. Second Dist., Div. Three. Mar. 15, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
MIGUEL MORA, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ernest Martinez and James A. Uyeda, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert R. Anderson and Thomas L. Willhite, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant Miguel Mora (Mora) appeals from the judgment of conviction of voluntary manslaughter (Pen. Code, § 192, subd. 1), with a finding that a principal was armed with a firearm (Pen. Code, § 12022, subd. (a)), entered after court trial.

The judgment is affirmed.

PROCEDURAL AND FACTUAL BACKGROUND

Mora and one Enriquez were charged with the murder of Antonio Arteaga (Arteaga) with the special circumstance that the killing was in retaliation for testimony given in an earlier criminal proceeding (Pen. Code, §§ 187, 190.2, subd. (a)(10)). Enriquez, tried separately by jury, was found guilty of first degree murder. On November 12, 1981, immediately following the Enriquez verdict, Mora waived his right to a jury trial and agreed to submit the matter on the transcript of his preliminary hearing as well as the evidence adduced at Enriquez' trial.

The following day, prior to the trial court's consideration of the evidence presented at the preliminary hearing and at Enriquez' trial, Mora waived

his right to confront the witnesses from both prior proceedings whose testimony would be considered against him.

An evidentiary hearing held on order of this court established that on November 12, 1981, interpreter Robert Morgenstern (Morgenstern) was sworn to translate at the taking of the verdict in the *Enriquez* matter which immediately preceded Mora's hearing, and the interpreter then translated at Mora's hearing, although "he was not re-sworn for the Mora case."

Witnesses at the prior proceedings testified to the following facts:

On July 4, 1980, Arteaga was shot and killed in front of a friend's house by Enriquez, who was in a car driven by Mora. Enriquez confessed that he killed Arteaga because Arteaga had testified against him in an earlier court proceeding. Enriquez's statement indicated that Mora had done nothing except give Enriquez a ride in Mora's car and stop where Enriquez told him to stop, and that Mora was unaware that Enriquez was going to shoot Arteaga. Other testimony established appellant's advance knowledge of the shooting and that he drove the getaway car.

Testifying in his own defense, Mora denied having advance knowledge that Enriquez was planning to shoot anyone and denied knowing that Enriquez had a gun when he entered Mora's car.

Expressing a reasonable doubt as to Mora's guilt of first or second degree murder, the trial court found Mora guilty of voluntary manslaughter.

## CONTENTIONS

Mora contends that the judgment must be reversed because: (1), his interpreter for his jury waiver was not sworn;[1] and (2), his submission on the preliminary hearing transcript was not accompanied by an express waiver of his privilege against self-incrimination, nor by an advisement of the direct consequences of a conviction.

## DISCUSSION

1. *The interpreter was constitutionally adequate.*

■ Mora's assertion that his waiver of a jury trial was invalid as he was deprived of his right to a constitutionally effective interpreter by the failure

---

[1]In his opening brief, Mora argued that his jury waiver was taken without the appointment or the express waiver of an interpreter, although he demonstrated an inadequacy to understand English, and in 11 of the prior 14 court appearances, he required the assistance of an interpreter. Thereafter, this court ordered an evidentiary hearing to ascertain what took place on the date in question. The minute order thereof reflected the following factual finding: "The interpreter was sworn for the matter immediately preceeding, which was the Enriquez matter. The court finds that he was not re-sworn for the Mora case." Supplemental briefs were subsequently filed.

of his interpreter to take the oath prescribed by Evidence Code section 751, subdivision (a), is without merit.

Article I, section 14, of the California Constitution provides in pertinent part that "a person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." An interpreter is required by statute to take an oath "that he will make a true interpretation to the witness in a language that the witness understands and that he will make a true interpretation of the witness' answers to questions to counsel, court, or jury, in the English language, with his best skill and judgment." (Evid. Code, § 751, subd. (a).)

However, as an interpreter is subject to the rules of law relating to witnesses (Evid. Code, § 750), any impropriety in his failure to take the oath was waived by Mora's failure to timely object. (*People* v. *Thomas* (1967) 65 Cal.2d 698, 708 [56 Cal.Rptr. 305, 423 P.2d 233]; *People* v. *Haeberlin* (1969) 272 Cal.App.2d 711, 716 [77 Cal.Rptr. 553]; see *Herbert* v. *Superior Court* (1981) 117 Cal.App.3d 661, 665, fn. 2 [172 Cal.Rptr. 850, 19 A.L.R.4th 1276]; cf. *People* v. *Reyes* (1976) 62 Cal.App.3d 53, 70 [132 Cal.Rptr. 848].)

Even were this court to hold otherwise, Mora's assertion must fail. He does not claim that as a result of the trial court's failure to administer the oath to the interpreter, he was in any way prejudiced at this particular hearing by the quality of the translation provided by Robert Morgenstern. Indeed, Morgenstern, an official court interpreter, had been sworn to interpret for Mora in other court proceedings prior to, as well as following, the November 12 waiver hearing.

Morgenstern was Mora's sworn interpreter at two preliminary proceedings before the jury waiver, and at Mora's subsequent court trial and sentencing hearing. On the date of the jury waiver, the record shows that at 11:15 a.m., Morgenstern was sworn as an interpreter to take the verdict in the *Enriquez* case. Just 25 minutes later, in the same courtroom before the same judge, Mora's case was called and Morgenstern began interpreting for Mora, although through an oversight he was not sworn. The same prosecutor and defense counsel were also present.[2]

Mora does not assert, nor does the record suggest, that the interpreter took his duties any less seriously because the oath was not readministered at the commencement of this hearing. The record reflects that Mora partic-

---

[2]Mora's trial counsel stood in for Enriquez's attorney for the taking of the verdict in the *Enriquez* case.

ipated in the proceedings in question and that he clearly was not "reduced to an insensible object, unable to assist or even communicate with counsel . . . [so] as to result in a denial of due process." (Compare *People* v. *Menchaca* (1983) 146 Cal.App.3d 1019, 1025 [194 Cal.Rptr. 691].)

In *People* v. *Menchaca, supra,* at page 1025, the court deemed the omission of the oath to the district attorney's investigator, whom the defendant used in "desperation" as a "stop-gap interpreter," to be "fatal to the constitutional effectiveness of an interpreter." The court held that a third-party witness interpreter cannot insure that a defendant spontaneously understands testimony, court rulings, or discussions between the court and counsel, and that "nothing short of a sworn interpreter at defendant's elbow will" satisfy constitutional requirements. (*Id.,* at p. 1025.)

In *People* v. *Chavez* (1981) 124 Cal.App.3d 215, 222-226 [177 Cal.Rptr. 306], the case relied on in *Menchaca,* it was the "sum" of many factors which caused a finding that the defendant had been deprived of his constitutional right to an interpreter throughout the proceedings. There, the defendant's trial counsel acted as defendant's interpreter on several occasions, but was sworn only once, and the trial court had "reason to question the adequacy of communication between [counsel] and defendant." (*People* v. *Chavez, supra,* at p. 226.) At one point, an employee of the district attorney's office acted as an unsworn interpreter. (*Id.,* at p. 223.)

The *Chavez* court observed that "Evidence Code sections 750 and 751 require the administration of a precisely formulated oath to any person who is to act as an interpreter. The statutory requirements are mandatory in a criminal prosecution." (*Id.,* at p. 225.)

This observation falls far short of a holding that the mere failure to swear a competent, court-qualified interpreter, when not objected to in the trial court, deprives a defendant of the constitutionally required services of an interpreter.

In a case such as this where a qualified interpreter was at Mora's elbow throughout the proceeding competently interpreting, the only conceivable flaw was the trial court's inadvertent failure to readminister the oath after the interpreter's sworn service in the related, immediately preceding matter. Such failure to comply with the statutory requirement of the oath did not render the services of Mora's interpreter constitutionally ineffective and did not deprive Mora of his constitutional right to an interpreter throughout the proceeding. (Cal. Const., art. I, § 14.)

*2. The failure to advise does not require reversal.*

■ Mora further contends that when he agreed to submit his case on the transcripts of prior hearings he was not advised of, nor did he waive, his privilege against self-incrimination. Further, he contends that the trial court neglected to advise him of the nature of the charge and the consequences of conviction, which include the range of punishments and the possibility of deportation. The People concede that the failure to so advise constitutes error.

■ The Supreme Court has mandated that the record demonstrate that the defendant has expressly waived, inter alia, his privilege against self-incrimination, that he understands the nature of the charges, and that he has been advised of the direct consequences of conviction. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086].) A defendant must be advised that if he is not a United States citizen, a possible consequence of conviction is deportation. (*People* v. *Guzman* (1981) 116 Cal.App.3d 186, 192 [172 Cal.Rptr. 34].) These requirements apply equally to guilty pleas and to submissions on a transcript, even where, in the latter case, the defendant contests his guilt by presenting additional evidence. (*Bunnell* v. *Superior Court, supra,* 13 Cal.3d at p. 604.)

■ However, the trial court's failure to give these advisements in the instant case is utterly nonprejudicial. Mora testified on his own behalf "and thus directly waived his privilege against self-incrimination. He could not reasonably have been expected to understand that submission of the prosecution's case on the transcript somehow amounted to a further and different waiver of his privilege against self-incrimination." (*People* v. *Ingram* (1976) 60 Cal.App.3d 722, 727 [131 Cal.Rptr. 752].) While the trial court did not advise him at the time of the submission of the nature of the charge against him, it may be inferred from the fact that he had a preliminary examination, at which he was informed that he was charged with murder, and was represented by able counsel, that he was aware of the nature of the charges against him. Under these circumstances, "[t]o say that he did not understand the nature of the charges against him would be to indulge in pure sophistry." (*People* v. *Orduno* (1978) 80 Cal.App.3d 738, 749-750 [145 Cal.Rptr. 806].)

As to the failure to advise of the possible consequences of conviction, "no practical purpose would have been served by advising [Mora] of the range of punishments on conviction since he already was doing all he could through the presentation of a comprehensive defense in order to avoid conviction." (*People* v. *Ingram, supra,* 60 Cal.App.3d at p. 727.) The Supreme Court in *In re Ronald E.* (1977) 19 Cal.3d 315, 325-326 [137

Cal.Rptr. 781, 562 P.2d 684], in evaluating error for failure to advise of the consequences of an admission, observed: "We do not know, of course, whether petitioner would or would not have admitted the truth of the allegations if he had been advised of the consequences of his admission. We deem it significant, however, that petitioner provides us with no basis for a belief that had he been properly admonished he would have entered a different response to the allegations of the petition. Nor does he claim even now that he was not aware that his admission of the truth of the allegations of the third supplemental petition would most likely result in his detention in a Youth Authority facility. We thus do not believe it reasonably probable that such admonishment would have persuaded petitioner to deny the truth of the allegations. It thus appears that insofar as the record and petitioner's allegations establish, he was not prejudiced by the failure of the court to advise him of the consequences of his admission . . . ."

Similarly, it is apparent from the instant record that it is not reasonably probable that a proper advisement would have prompted Mora to have proceeded any differently. After Enriquez's conviction by jury of murder in the first degree, Mora chose to waive jury trial and to present evidence denying his own criminal complicity in the murder and contesting the evidence which in part had led to Enriquez's conviction. Mora, charged with murder, was then found guilty only of manslaughter. Mora thus was not prejudiced by the court's defective advisement. (*Id.,* at p. 326.)

### DISPOSITION

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.

On April 9, 1984, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied June 28, 1984.