[Crim. No. 17021. Fourth Dist., Div. Three. Mar. 27, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ISEDRO HERNANDEZ ROMERO, Defendant and Appellant.

## COUNSEL

Aurora Dawn Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, John W. Carney and Yvonne H. Behart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SONENSHINE, J.**—Isedro Hernandez Romero was convicted of second degree murder (Pen. Code, § 187)[1] with use of a knife (§ 12022, subd.

---

[1] All statutory references are to the Penal Code unless otherwise noted.

(b)). He argues the failure to provide him with an interpreter throughout the proceedings resulted in a denial of due process. We agree and reverse.[2]

The facts, not essential to a resolution of this appeal, may be briefly summarized. During a party, Sergio Cruz, a noninvitee, attempted to coax one of the guests, Sophia, outside. Although Cruz and Sophia had previously dated, Sophia refused to leave the house.

Cruz returned hours later accompanied by Romero and others. When Sophia still refused to leave with Cruz, catcalls were made until a fight erupted between those inside the house and Cruz and his friends. During the brawl, witnesses identified Romero as stabbing Jose Gomez, Sophia's cousin. Romero, Cruz and the others fled.

Gomez's autopsy revealed he died from eight stab wounds. Romero was arrested at a hospital while being treated for cuts and bruises. Blood tests showed Romero's blood alcohol level to be .16.

Romero admitted at trial he accompanied Cruz to the party and was involved in a fight, but denied stabbing anyone. In addition he admitted drinking beer but denied feeling its effect.

At the commencement of trial, Romero's attorney entered into a stipulation.[3] It purported to limit the need to employ two Spanish interpreters; one for appellant who spoke only Spanish and one for the eight wit-

---

[2]Appellant additionally argues two meritless issues; whether his murder conviction should be reduced to manslaughter (§ 1260) and whether the trial court should have extended immunity from arrest (§ 1334.3) to his witnesses from Mexico. As to the former, the People should be permitted a second attempt to obtain a murder conviction; as to the latter, the record contains no request for immunity.

[3]"Mr. Kies: Yes, your Honor. I'll be prepared to stipulate that the court may use just one interpreter when there is a Spanish speaking witness on the stand and that the interpreter may interpret the witness and, with leave of the court to, of course, to call the interpreter over if I have to speak to my client.

"Should I run into any serious difficulties, I would then be asking the court for further assistance as far as interpretation.

"Mr. Goethals: So stipulated.

"The Court: That stipulation is entered. It may be inconvenient to the conducting of the trial, but we're going to endeavor to use the services of one interpreter for both problems, that is, the interpretation of the witnesses who are also Spanish speaking and we may be interrupted from time to time if counsel needs to speak to his Spanish speaking client, the defendant, Mr. Romero. It's not likely that a lot of communication of that nature may be involved, but there may be some."

nesses who also spoke only Spanish. ■ ■■ ■ ■ The court's acceptance of the stipulation was error.[4]

Article I, section 14 of the California Constitution guarantees "[a] person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." The trial court in accepting counsel's stipulation was obviously attempting to comply with the requirements of providing an interpreter for Romero, while at the same time efficiently conducting the court's business. However, the use of one interpreter to translate both the defendant and witness satisfies neither article I, section 14 nor due process.

A "[d]efendant's spontaneous understanding of the testimony has vital importance in determining whether he was denied due process of law." (*People* v. *Menchaca* (1983) 146 Cal.App.3d 1019, 1024 [194 Cal.Rptr. 691].) Although the record suggests, as in *Menchaca,* some of the Spanish testimony of the witnesses may have been heard by appellant, it is just as clear other portions of the trial were not translated at all and were therefore neither "heard" nor understood by Romero.

A review of the entire trial record reflects eight witnesses other than the appellant required the services of a Spanish interpreter. During their testimony, the lone interpreter stood by the witness and interpreted only the questions asked and the answers received.[5] Romero, during their testimony, sat at counsel table without benefit of Spanish interpretation while counsel made 31 evidentiary objections, conducted 25 separate discussions with the court,[6] and twice read into the record former testimony of witnesses. At times the record was " " ". . . as though [the] defendant were forced to observe the proceedings from a soundproof booth or seated out of hearing

---

[4]This issue is couched in a claim of ineffective assistance of counsel. Although we can see no tactical reason for stipulating to the use of one interpreter, the court was obligated to protect appellant's due process rights and reject the stipulation. Further, since the right to an interpreter is "guaranteed in the Constitution, it may not validly be waived without an 'affirmative showing,' on the record, of a waiver which was 'intelligent and voluntary' on the part of the affected defendant. (Cf. *Boykin* v. *Alabama* (1969) 395 U.S. 238, 242-243 [23 L.Ed.2d 274, 279, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449], cert. den. 398 U.S. 911 [26 L.Ed.2d 72, 90 S.Ct. 1708].)" (*People* v. *Chavez* (1981) 124 Cal.App.3d 215, 227 [177 Cal.Rptr. 306]; *People* v. *Carreon* (1984) 151 Cal.App.3d 559, 572-573 [198 Cal.Rptr. 843].) Nothing demonstrates appellant was consulted, let alone that a waiver was taken.

[5]At one point the prosecution read four pages of preliminary examination testimony into the record and defense counsel attempted to impeach the witness using it, until the court commented: "The Court: Wait a minute. He doesn't have any idea what the District Attorney just read because it was not interpreted."

[6]Discussions not translated for Romero covered the in-court identification of appellant, three stipulations setting forth the testimony of witnesses, descriptions of exhibits for the record, and the grounds for admitting former testimony.

at the rear of the courtroom, being able to observe but not comprehend the criminal process whereby the state had put his freedom in jeopardy. Such a trial comes close to being an invective against an insensible object, possibly infringing upon the accused's basic 'right to be present in the courtroom at every stage of his trial' [citations omitted] *State* v. *Navidad,* 111 Ariz. at 194, 526 P.2d at 733." ' (*State* v. *Rios, supra,* 539 P.2d 900 at p. 901.)" (*People* v. *Chavez, supra,* 124 Cal.App.3d 215, 226-227, second brackets in original.)

Finally, respondent's suggestion the stipulation permitted appellant's counsel to stop the proceedings to communicate with Romero ". . . was inadequate to fulfill the constitutional mandate. It is the *defendant's* ability to instantaneously communicate with counsel upon a spontaneous understanding of the testimony and the proceedings which must be protected. . . . [N]othing short of a sworn interpreter at defendant's elbow will suffice." (*People* v. *Menchaca, supra,* 146 Cal.App.3d 1019, 1025; *People* v. *Chavez, supra,* 124 Cal.App.3d 215, 226-227.)

Appellant was effectively denied his right to an interpreter and a fair trial. The judgment is reversed.

Wallin, Acting P. J., and Crosby, J., concurred.