[No. F002422. Fifth Dist., Nov. 15, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE QUEVEDO RIOZ et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts III through V of this opinion are not certified for publication. (See Cal. Rules of Court, rules 976 and 976.1.)

COUNSEL

Howard J. Berman, Robert J. Wade, Cliff Gardner and Frank DiSabatino, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Eddie T. Keller, Janice Rogers Brown and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HAMLIN, J.—Defendants Jorge Ramirez, Geraldo Flores and Federico Marroquin were charged by information with forcible rape in concert (Pen. Code, § 261, subd. (2),[2] and § 264.1) and false imprisonment (§ 236).[3] Additionally, defendant Ramirez was charged with forcible oral copulation (§ 288a, subd. (c)). By separate information, defendant Jose Quevedo Rioz was charged with forcible rape in concert and false imprisonment. On motion by the People the trial of all defendants was consolidated. The jury found all four defendants guilty of forcible rape in concert and false imprisonment and acquitted defendant Ramirez of forcible oral copulation. The court sentenced all defendants to the mitigated term of five years for the forcible rape in concert. It stayed all sentences for false imprisonment. All four defendants appeal. They contend on appeal that their convictions were unlawful in that they were denied their constitutional right to an interpreter. We agree and reverse the judgments.

---

[2]All further statutory references are to the Penal Code unless otherwise stated.

[3]In *People* v. *Aguilar* (1984) 35 Cal.3d 785, 787, footnote 1 [200 Cal.Rptr. 908, 677 P.2d 1198], Justice Reynoso noted that when there is uncertainty as to which of two Spanish last names is, in fact, the surname, the use of both names is proper. While the transcript in the instant case does evidence some such uncertainty, for purposes of clarity, Jorge Paredes Ramirez will be referred to as Ramirez, Federico Santiago Marroquin will be referred to as Marroquin, Geraldo Ortiz Flores will be referred to as Flores, and Jose Quevedo Rioz will be referred to as Rioz.

## THE FACTS

About 9 p.m. on November 26, 1982, Belinda D. went to Nick's Tavern in Sanger to visit with friends. After drinking two beers at Nick's Tavern, Belinda went to a taco wagon parked nearby. While Belinda was waiting for her food, defendants Marroquin and Flores approached her. The three finally agreed to go to the Paraiso Club to dance and have a few drinks. When Belinda accompanied Marroquin and Flores to their car, Flores got into the driver's seat of the station wagon and opened the car for Belinda to sit in the middle of the front seat between him and Marroquin. Belinda then heard the two rear doors open and saw two unknown men get into the back seat. In response to Belinda's question about the two unknown men, Flores told her he was giving them a ride to the Paraiso Club.

Rather than going to the Paraiso Club, Flores drove to an isolated area off North Avenue. There the four defendants had intercourse with Belinda. She submitted to their acts in the belief that was the only way she could escape harm.

After the acts of intercourse were completed, Belinda walked to a nearby house where the residents called her mother and also called the sheriff, although the latter call was not requested by Belinda. When the sheriff arrived, Belinda gave him a description of her assailants and then accompanied the sheriff back to the scene, where the sheriff located three men in two cars, one of which was a station wagon. The cars were connected with a wire.

Although Belinda initially told the sheriff that all three men present at the scene had assaulted her, only two of the three had actually been involved. The third was apparently there to help with the car. Belinda corrected her statement that same evening, and she testified she was upset and confused and had not looked carefully at the men when she was taken back to the scene.

Belinda subsequently identified defendants Ramirez, Flores and Marroquin from a photo lineup. She identified defendant Rioz in a live lineup at juvenile hall.

Defendants Ramirez, Flores and Marroquin were *Mirandized* and gave statements to the police. All acknowledged Belinda did not want to have intercourse with them but may have submitted out of fear they would accomplish the act regardless of her wishes.

## DEFENSE

Defendant Rioz took the stand and testified that the group had originally traveled to the area of North Avenue in order to borrow some money from a friend. However, the car stalled, and Belinda started to walk back to town. The defendants persuaded her to remain and, prior to reentering the station wagon, Belinda indicated a willingness to have sex with the defendants for money. Rioz was attempting to start the car while Flores and Ramirez were having intercourse with Belinda. When Rioz himself entered the car, he asked Belinda if she would do with him what she had done with the others. Belinda replied that she would do so for $30. Rioz told her he did not have the money that night but would pay her the following day at the Mirror Bar, where Rioz testified they had met. Belinda assented, and Rioz had sexual intercourse with her. Rioz believed she was willing to participate in the act.

The defense also introduced the testimony of Sanger resident Martha Alba, who stated she had known Belinda for a long time, and Belinda had a very poor reputation in the community for truthfulness.

## DISCUSSION

### I. *Were Defendants Denied Their Constitutional Right to an Interpreter?*

It is clear from the record that one interpreter was employed for all four Spanish-speaking defendants. Each defendant was equipped with an earphone/headset. The record does not reveal any of the technical aspects of the interpretation beyond this. Moreover, when defendant Rioz took the stand, the single interpreter was used to interpret for him as a witness.

In *People* v. *Aguilar, supra,* 35 Cal.3d 785 the Supreme Court recently found reversible error in the borrowing of a defendant's interpreter to translate the questions to and testimony of a Spanish-speaking witness. The court noted that a criminal defendant's right to an interpreter is based on article I, section 14 of the California Constitution, which provides in pertinent part, "A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." The court in *Aguilar* concluded that, while the trial court had complied with this constitutional mandate in appointing an interpreter for the defendant, it had impinged on this right when it "borrowed" the defendant's interpreter in order to translate for a Spanish-speaking prosecution witness. In explaining its holding, the court stated:

"Interpreters play three different but essential roles in criminal proceedings: '(1) They make the questioning of a non-English-speaking witness

possible; (2) they facilitate the non-English-speaking defendant's understanding of the colloquy between the attorneys, the witness, and the judge; and (3) they enable the non-English speaking defendant and his English-speaking attorney to communicate . . . an interpreter performing the first service will be called a "witness interpreter," one performing the second service, a "proceedings interpreter," and one performing the third service a "defense interpreter." ' (Chang & Araujo, *Interpreters for the Defense: Due Process for the Non-English-Speaking Defendant* (1975) 63 Cal.L.Rev. 801, 802; . . .) While the three roles are interrelated they are distinct.

"The defendant's right to understand the instructions and rulings of the judge, the questions and objections of defense counsel and the prosecution, as well as the testimony of the witnesses is a continuous one. At moments crucial to the defense—when evidentiary rulings and jury instructions are given by the court, when damaging testimony is being introduced—the non-English-speaking defendant who is denied the assistance of an interpreter, is unable to communicate with the court or with counsel and is unable to understand and participate in the proceedings which hold the key to freedom. Thus, the 'borrowing' of the interpreter, the accused's only means of communicating with defense counsel and understanding the proceedings, was a denial of a constitutional right." (*People* v. *Aguilar, supra,* at pp. 790-791, fns. omitted.) (See also *People* v. *Menchaca* (1983) 146 Cal.App.3d 1019, 1025 [194 Cal.Rptr. 691], in which the court concluded that "nothing short of a sworn interpreter at defendant's elbow will suffice"; *People* v. *Chavez* (1981) 124 Cal.App.3d 215 [177 Cal.Rptr. 306].)

To the extent the single interpreter in the instant proceeding was "borrowed" at the time defendant Rioz took the stand, without the consent of all the defendants on the record, the constitutional right of defendants Ramirez, Flores and Marroquin was violated within the direct holding of *People* v. *Aguilar, supra,* 35 Cal.3d 785. ██ Whether this borrowing of the interpreter to translate defendant Rioz' testimony is, without more, a violation of Rioz' constitutional right to an interpreter throughout the proceedings is not so clear. However, it is unnecessary to decide that question in this case because there is more. Throughout his trial defendant Rioz was required to share the single interpreter with his three codefendants. Under these circumstances it is not realistic to expect defendant Rioz to be able to communicate with his lawyer at any time the need arises. (*People* v. *Menchaca, supra,* 146 Cal.App.3d at p. 1025.) We therefore conclude that providing only one interpreter for four defendants deprived each of those defendants of his constitutional right to an interpreter.

We emphasize that our holding in this case is not to be read as mandating individual interpreters in all conceivable proceedings for each of multiple

defendants jointly charged. There are numerous criminal proceedings, such as arraignments, changes of plea, uncontested motions, etc., at which no witnesses are called and thus no witness interpreter required. The nature and pace of these proceedings themselves, as well as the fact that the involvement of each of multiple defendants with the court is frequently serial rather than simultaneous, reasonably permits a single interpreter to act as defense interpreter and proceedings interpreter for more than one defendant. However, in any proceeding at which witnesses are called and testimony taken, the fundamental rights of a defendant to understand the proceedings being taken against him and to immediately communicate with counsel when the need arises require that each non-English-speaking defendant be afforded an individual interpreter throughout the proceedings.

This leaves only the question of the standard to be applied in determining whether reversal is required. In *People* v. *Carreon* (1984) 151 Cal.App.3d 559 [198 Cal.Rptr. 843] this court recognized reversible error only when the defendant can show he suffered prejudice from the lack of defense interpreter services. The court pointed out, however, that the prejudice need not be actual; like the flexible standard developed by the Supreme Court to deal with effective assistance of counsel, only informed speculation that the defendant's right to a fair trial has been compromised need be shown.

Although defendants have argued that a more stringent standard than that announced in *People* v. *Carreon, supra,* should be applied, we need not decide on the facts of this case whether requiring multiple defendants to share a single interpreter constitutes reversible error per se or whether such error impinges on rights protected by the United States Constitution, thus mandating review under *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]. Since the one interpreter could not act even as a proceedings interpreter and as defense interpreter for all defendants, the conclusion is inescapable that each of the defendants did not know at all times what was going on in the proceedings, or they had no effective means of communicating with their respective attorneys at critical points of the trial, or both. These critical points of the trial necessarily occurred during the victim's testimony and the testimony of other witnesses in the case. Under the *Carreon* standard, reversal of the conviction of each defendant is therefore required.

Notwithstanding our conclusion that reversal is required on this basis, we will consider those other issues the defendants raised in their appeals necessary for the guidance of the trial court on retrial.

II. *Did the Trial Court Err in Denying Defendants' Motion to Present Evidence of the Complaining Witness' Conviction for Prostitution as Well as Specific Aspects of Her Activities?*

 Before trial, defendant Ramirez filed his written motion, with supporting affidavit, to be allowed to introduce certain evidence at trial to attack the complaining witness' credibility pursuant to section 782 of the Evidence Code. He offered evidence of the complaining witness' conviction for prostitution as well as certain aspects of her activities as a prostitute. The court initially heard argument on the motion immediately before trial commenced and at that time denied the motion without prejudice to renew it later if the victim's testimony or other evidence put the credibility of the victim in issue. The motion was renewed after defendant Rioz testified that the victim had agreed to engage in sexual intercourse with him if he paid her $30. After lengthy argument, the trial court ultimately excluded the evidence based upon its interpretation of Evidence Code section 1103, subdivision (b)(1). The text of sections 782 and 1103, subdivision (b)(1), is set forth below at footnote 4.[4] Significantly, subdivision (b)(4) of Evidence Code

---

[4]Evidence Code section 782 provides:

"(a) In any prosecution under Section 261, 264.1, 286, 288a, or 289 of the Penal Code, or for assault with intent to commit, attempt to commit, or conspiracy to commit any crime defined in any such section, except where the crime is alleged to have occurred in a local detention facility, as defined in Section 6031.4, or in a state prison, as defined in Section 4504, if evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness under Section 780, the following procedure shall be followed:

"(1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness.

"(2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

"(3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at such hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant.

"(4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352 of this code, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

"(b) As used in this section, 'complaining witness' means the alleged victim of the crime charged, the prosecution of which is subject to this section."

Evidence Code section 1103, subdivision (b)(1), provides:

"(b)(1) Notwithstanding any other provision of this code to the contrary, and except as provided in this subdivision, in any prosecution under Section 261 or 264.1 of the Penal Code, or under Section 286, 288a, or 289 of the Penal Code, or for assault with intent to commit, attempt to commit, or conspiracy to commit a crime defined in any such section, except where the crime is alleged to have occurred in a local detention facility, as defined in Section 6031.4, or in a state prison, as defined in Section 4504, opinion evidence, repu-

section 1103 provides, "Nothing in this subdivision shall be construed to make inadmissible any evidence offered to attack the credibility of the complaining witness as provided in Section 782."

Shortly after the instant case was tried, the Second District Court of Appeal filed its opinion in *People* v. *Varona* (1983) 143 Cal.App.3d 566 [192 Cal.Rptr. 44]. In *Varona,* two defendants were convicted of false imprisonment and forcible rape, and one of the defendants was convicted of forcible oral copulation. The defendants had sought unsuccessfully to introduce evidence that the victim was on probation, having pleaded guilty to prostitution, and the appellate court reversed. The court rejected defendants' first contention that evidence the complaining witness was on probation was admissible with respect to the witness' credibility. The court stated in part, "In this case, an attack on the woman's credibility would necessarily be an attack on her claim of nonconsent and evidence of prior conduct to show consent is expressly barred by section 1103 of the Evidence Code." (*Id.,* at p. 569.) However, the court accepted the defendant's contention that "under section 782 of the Evidence Code, a trial court may permit evidence of prior sexuality in a particular case." (*Ibid.*) The court concluded: "[I]n this case, on the particular facts here involved, it was an abuse of discretion to deny the Evidence Code section 782 motion. We do not, here, hold that in every rape case where the prosecutrix is a prostitute, that evidence of that fact must be admitted to show consent. The official records offered here show, not only that the woman was a prostitute, but: (1) that, in pursuit of her profession, she walked the night streets, in this very area, to solicit customers; and (2) that, in the practice of that profession, she not only engaged in normal intercourse, but that she specialized in oral copulation. The first fact is here of special significance in that it casts light on the woman's story that she was walking to the bus stop because the 'friend' who had driven her from the friend's home had callously refused to drive two blocks further, to the bus stop because the friend had, at 11:30 p.m., an urgent appointment at home. The second fact is also very significant in that it tends to support the defense claim that the oral copulation, on which count IV was based, was voluntarily engaged in by the woman. These special factors, we conclude, made it an abuse of discretion to deny the disclosure motion." (*Id.,* at pp. 569-570.)

While we agree with the court's conclusion in *People* v. *Varona, supra,* we do not find it particularly helpful in this case because it fails to discuss the inherent tension between Evidence Code section 782 and section 1103, subdivision (b)(1).

---

tation evidence, and evidence of specific instances of the complaining witness' sexual conduct, or any of such evidence, is not admissible by the defendant in order to prove consent by the complaining witness."

There is necessarily a certain amount of overlap between the issues of the victim's consent in a rape or other sex offense case and the victim's credibility. Presumably, any complaining witness in a rape case will deny consent to the sexual acts complained of; to avoid the harassment which had traditionally plagued complaining witnesses in cases of this type, the Legislature excluded evidence of prior sexual activity by the complaining witness with persons other than the defendant in order to prove consent. Thus, it seems clear under Evidence Code section 1103, subdivision (b)(1), that a defendant in a rape case cannot, based solely upon the victim's testimony and her presumed denial of consent, introduce evidence that she engaged in sexual activity with 1 other man, 10 other men, or 100 other men, nor that she engaged in such activity freely or for monetary compensation. This rule properly prevents the victim of sexual assault from being herself placed on trial. However, once the defendant, in accordance with the procedural requirements of Evidence Code section 782, makes a *sworn* offer of proof concerning the relevance of the sexual conduct of the complaining witness to attack her credibility, even though it is the underlying issue of consent which is being challenged, then the absolute protection afforded by Evidence Code section 1103, subdivision (b)(1), gives way to the detailed procedural safeguards inherent in Evidence Code section 782.

It is significant that the express provisions of Evidence Code section 782 vest broad discretion in the trial court to weigh the defendant's proffered evidence, prior to its submission to the jury, and to resolve the conflicting interests of the complaining witness and the defendant. Initially, the trial court need not even hold a hearing unless it first determines that the defendant's sworn offer of proof is sufficient. Moreover, even after a hearing outside the presence of the jury at which the complaining witness is questioned about the defendant's offer of proof, the statute specifically reaffirms the trial court's discretion, pursuant to Evidence Code section 352, to exclude relevant evidence which is more prejudicial than probative. An example serves to demonstrate the wisdom of this statutory framework: A defendant charged with forcible rape makes the requisite written motion, supported by a sworn affidavit, offering to prove that the complaining witness, a convicted prostitute, agreed to have sex with the defendant for money and charged him with rape to get even with him when he refused to pay her. However, not only has the complaining witness denied that the sexual activity with the defendant was consensual, but other evidence establishes without contradiction that the complaining witness was beaten in connection with the event. Given the potentially prejudicial impact of a prostitution *conviction on the victim's testimony that she did not consent, the trial court,* in the exercise of its discretion, may determine that the injuries suffered by the victim are wholly inconsistent with the defendant's offer of proof and either reject the sufficiency of the offer of proof in the first instance or

exclude evidence of the prostitution conviction, after a hearing, pursuant to Evidence Code section 352.

This discretion in the trial court, along with the other safeguards inherent in Evidence Code section 782, including the requirement that the defendant tender a sworn offer of proof of the relevancy of the complaining witness' sexual conduct to attack her credibility, all operate to provide a rational resolution of the tension existing between Evidence Code sections 782 and 1103, subdivision (b)(1). Such a resolution recognizes both the right of the victim to be free from unwarranted intrusion into her privacy and sexual life beyond the offense charged and the right of a defendant who makes the necessary sworn offer of proof in order to place the credibility of the complaining witness at issue to fully establish the proffered defense. As the First District Court of Appeal recently stated in *People* v. *Mizchele* (1983) 142 Cal.App.3d 686 [191 Cal.Rptr. 245]: "We are further of the opinion that defendant had a *constitutional right* to present such material and relevant evidence in his favor, as was not otherwise disallowed by statute. 'Few rights are more fundamental than that of an accused to present witnesses in his own defense.' [Citations omitted.] 'The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.' [Citation omitted.]" (*Id.,* at p. 691.) Just as the court in *Mizchele* recognized possible statutory restrictions on the defendant's constitutional right to present a defense, so a defendant seeking to offer evidence of a complaining witness' sexual conduct in order to attack her credibility is limited by the trial court's discretion as we have discussed.

In the instant case, the trial court noted that the original motion under Evidence Code section 782, made by *defendant Ramirez* and joined in by his three codefendants, was procedurally defective, specifically with respect to the sworn offer of proof. However, the court proceeded to consider the merits of the motion, both when originally made and when subsequently renewed following the testimony of *defendant Rioz.*[5] Only defendant Rioz took the stand and testified that the complaining witness had agreed to perform an act of sexual intercourse with him in exchange for $30. Significantly, the other defendants not only did not take the stand but

---

[5]Given the significant and otherwise prohibited intrusion into the prior sexual history of the complaining witness in a sexual assault case countenanced by Evidence Code section 782, the trial court should insist upon strict compliance with the statutory requirements.

had admitted in prior statements to the police that they forced the victim to have sexual intercourse or, at least, were aware at the time of the act that she was unwilling to participate. Therefore, following his testimony, had *defendant Rioz* filed a written motion with supporting affidavit showing the relevance of the complaining witness' sexual conduct as it bore on her credibility, we believe such an offer of proof, corresponding to Rioz' testimony, would have been sufficient to give rise to the trial court's obligation to hold a hearing and question the complaining witness, outside the presence of the jury, as to Rioz' offer of proof. Of course, no such hearing was held in the instant case, and we cannot comment prospectively upon the trial court's exercise of its discretion, pursuant to Evidence Code section 352, regarding the admissibility of the evidence adduced at such a hearing.

■ We note the particular problems which may arise under Evidence Code section 782 when multiple defendants are charged with sex offenses in concert, and at least one of the defendants intends to rely upon the defense of consent or otherwise to challenge the credibility of the complaining witness. It seems almost certain that such a defense would be known to trial counsel prior to the time for trial, and the obvious conflict in the defenses in such a case would be a strong factor weighing in favor of severing the trial of the defendant relying upon the consent defense, for example, from the trial of his codefendant(s). ■ Of course when, as in the instant case, no defendant moved for severance and the proceedings pursuant to Evidence Code section 782 occur in midtrial, a limiting instruction should be given admonishing the jury that evidence of prior sexual conduct of the complaining witness can be considered only as it bears upon her lack of credibility and only as to the defendant or defendants who place her credibility at issue.

■ We emphasize again the necessity that a defendant advancing a defense of consent bears the burden of affirmatively offering to prove, under oath, the relevance of the complaining witness' sexual conduct to attack her credibility in some way other than by deprecating her character. It is not enough that a defendant alleges the complaining witness is a prostitute, has been convicted of prostitution, or engages in any particularized aspects of that profession *unless* the complaining witness has testified she did not consent to sex with that defendant *and* the defendant has presented evidence by his own testimony or otherwise which directly challenges the complaining witness' denial of consent *and* the defendant offers to prove, by sworn affidavit, that her prior sexual conduct is sufficient to attack her credibility as distinguished from her character. ■ Notwithstanding the overlap between the issues of credibility and consent in such a case, Evidence Code section 782 applies only when the credibility of the complaining witness is attacked. Great care must be taken to insure that this exception to the general rule barring evidence of a complaining witness' prior sexual conduct,

i.e., Evidence Code section 1103, subdivision (b)(1), does not impermissibly encroach upon the rule itself and become a "back door" for admitting otherwise inadmissible evidence.

 Thus in the instant case if, upon retrial, any of these four defendants seek to attack the credibility of the complaining witness, each must offer to prove, as required by Evidence Code section 782, that *as to him,* the complaining witness had agreed to have sex for money in contradiction to her presumed testimony that she had not consented. Of course, as to defendants Ramirez, Flores, and Marroquin, the trial court could properly consider their prior admissions to the police at the time the court considers any offer of proof.

III. *Did the Trial Court Have a Sua Sponte Obligation to Sever the Trial of Defendant Rioz?*

. . . . . . . . . . . . . . . . . . . . . . . .

We reverse the judgments against all defendants.

Franson, Acting P. J., and Woolpert, J., concurred.

*See footnote 1, *ante.*