Filed 6/30/16  P. v. Williams CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAMAR EDWARD WILLIAMS,<br><br>    Defendant and Appellant. | B267484<br><br>(Los Angeles County<br>Super. Ct. No. BA412265) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Dennis J. Landin, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, and Ilana Herscovitz, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Lamar Edward Williams (defendant) appeals his convictions of forcible oral copulation and aggravated kidnapping, as well as the ensuing 100-years-to-life prison sentence, on the ground that the trial court abused its discretion in excluding evidence that his victim had, the year before, loitered for the purposes of prostitution. We conclude the court did not abuse its discretion, and affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**I.     Facts**

In April 2009, defendant approached S.L. two or three times as she walked away from a bus stop. The last time he approached her, defendant had one of his hands in the pocket of the hoodie he was wearing, told her in an agitated voice that he had a gun, and ordered her into a nearby dark alley. Once in the alley, defendant removed S.L.'s pants, performed oral sex on her and ordered her to perform oral sex on him; when he ejaculated, she spat it out. S.L. reported to some persons (but not to others) that she also performed oral sex on defendant a second time and that defendant attempted to have vaginal sex with her. Once the sex acts were completed, defendant walked S.L. back to the alley's entrance and told her to wait there until he left in his car.

In May 2012, law enforcement showed S.L. a photospread and she identified defendant as her assailant. After this identification, law enforcement compared defendant's DNA with the DNA in the semen collected from S.L.'s chin immediately after the assault; there was a match.

Law enforcement questioned defendant. He indicated that he did not know S.L., was unfamiliar with the neighborhood where the assault took place, and had been intimate with only two people in 2009: (1) his wife; and (2) the mother of his children.

**II.    Procedural History**

The People charged defendant with two counts of forcible oral copulation (Pen. Code, § 288a, subd. (c)(2))[1], a single count of aggravated kidnapping (§ 209, subd. (b)(1)), and a single count of second degree robbery (§ 211). As to all but the

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

robbery, the People further alleged that defendant personally used a dangerous or deadly weapon (§ 667.61, subds. (a), (d)(1) & (e)(3)). The People also alleged that defendant had 30 prior strikes within the meaning of our Three Strikes law (§§ 667, subds. (b)-(j) & 1170.12, subds. (a)-(d)), and that his 1989 forcible oral copulation and rape conviction constituted a prior strike under our One Strike law (§ 667.61, subds. (a), (d)(1)).

The People moved to exclude, and defendant moved to admit, S.L.'s 2008 arrest for loitering for the purpose of prostitution (§ 653.22, subd. (a)), her resulting conviction for disturbing the peace (§ 415), and her admission to police that she had in fact been loitering for prostitution. Defendant sought to admit this evidence to impeach S.L. and to prove that she consented to the sex acts in the alley. The trial court ultimately excluded the evidence, citing Evidence Code section 352.

At trial, defendant testified. Contradicting what he told police in 2012, defendant testified that he and S.L. were in the midst of a consensual, sexual relationship; that she repaid him money she owed him, willingly had oral sex with him and willingly allowed him to perform oral sex on her in April 2009; that he suspected she had been sexually intimate with another man earlier that day; that S.L. admitted she had been with another man that day who had given her the money she used to repay defendant; that defendant asked her to leave; and that she warned him that he would regret his actions because "payback's a bitch." The parties stipulated that S.L. and her boyfriend had consensually had sex earlier in the same day as the sexual assault and that the boyfriend had ejaculated.

A jury found defendant guilty of both forcible oral copulation counts and of aggravated kidnapping, found true the allegation that he had used a dangerous or deadly weapon, and found true the allegation that his 1989 conviction qualified as a prior under the One Strike law; the jury acquitted defendant of robbery. After waiving his rights, defendant admitted his other prior convictions.

The trial court imposed a sentence of 100 years to life in prison. Specifically, the court imposed a 75-year-to-life sentence on the first forcible oral copulation count, calculated as a 25-year-to-life sentence under the One Strike law that is tripled under the Three Strikes law. The court imposed another 75-year-to-life sentence on the second oral

3

copulation count, to run concurrently. And the court imposed a consecutive 25-year-to-life sentence on the aggravated kidnapping count under the Three Strikes law.

Defendant timely appeals.

## DISCUSSION

Defendant argues that the trial court abused its discretion in excluding S.L.'s prior arrest, conviction and conduct to impeach her testimony and to prove her consent to the charged sex acts. Because S.L.'s arrest is inadmissible (e.g., *People v. Medina* (1995) 11 Cal.4th 694, 769 ["mere arrests are usually inadmissible, whether as proof of guilt or impeachment"]), and because her conviction is for a crime (disturbing the peace) that is not a crime of moral turpitude (e.g., *People v. Contreras* (2013) 58 Cal.4th 123, 157, fn. 24 [only convictions for crimes of moral turpitude are admissible for impeachment purposes]; *Wyatt v. Cerf* (1944) 64 Cal.App.2d 732, 738 [disturbing the peace is not a crime of moral turpitude]),[2] the chief issue before us is whether the court erred in excluding evidence that S.L. engaged in underlying conduct constituting the crime of loitering for prostitution (*People v. Wheeler* (1992) 4 Cal.4th 284, 295 (*Wheeler*), superseded on other grounds by Evid. Code, § 452.5; *Contreras*, at p. 157, fn. 24; *People v. Rivera* (2003) 107 Cal.App.4th 1374, 1380).

Although the Evidence Code generally bars, among other things, "evidence of specific instances of the complaining witness' sexual conduct . . . to prove consent by the complaining witness" (Evid. Code, § 1103, subd. (c)(1)), such evidence may still be admissible "to attack the credibility of the complaining witness as provided in [Evidence Code] Section 782" (*id.*, § 1103, subd. (c)(5)). These statutes nonetheless "reaffirm[] the role of Evidence Code section 352 in authorizing [a] trial court to exclude relevant evidence which is more prejudicial than probative." (*People v. Casas* (1986) 181 Cal.App.3d 889, 896; *People v. Fontana* (2010) 49 Cal.4th 351, 362.)

---

2    We accordingly have no occasion to assess whether her misdemeanor conviction is barred by the hearsay rule. (Cf. Evid. Code, § 452.5.)

4

Under Evidence Code section 352, a trial court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." In applying these considerations to the decision whether to admit prior misdemeanor conduct to impeach a witness, courts are to consider (1) "whether [the conduct] reflects on the witness's honesty or veracity," (2) "whether [the conduct] is near or remote in time," (3) "whether [the conduct] is for the same or similar conduct as the charged offense," (4) "what effect . . . admission [of that conduct] would have on the defendant's decision to testify" (*People v. Clark* (2011) 52 Cal.4th 856, 931-932, citing *People v. Beagle* (1972) 6 Cal.3d 441, 452), (5) the fact that "a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony," and (6) the fact that "impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present" (*Wheeler*, *supra*, 4 Cal.4th at pp. 296-297). A trial court has "broad" discretion in evaluating and weighing these factors (*Clark*, at pp. 931-932; *People v. Rioz* (1984) 161 Cal.App.3d 905, 916 (*Rioz*)), and "'[t]his discretion allows the trial court broad power to control the presentation of proposed impeachment evidence ""to prevent criminal trials from degenerating into nitpicking wars of attrition over collateral credibility issues." [Citation.]'"'" (*People v. Lightsey* (2012) 54 Cal.4th 668, 714.) Our review is confined to assessing whether the trial court has abused its discretion. (*Ibid.*)

We conclude there was no abuse of discretion. As an initial matter, S.L.'s conduct amounts at most to a misdemeanor, which as noted above is a "less forceful indicator of immoral character" that also raises "problems of proof [and] unfair surprise." (*Wheeler*, *supra*, 4 Cal.4th at pp. 296-297.) To be sure, this evidence has some marginal probative value. The crime of prostitution—and hence loitering for purposes of prostitution—is a crime of moral turpitude (*People v. Chandler* (1997) 56 Cal.App.4th 703, 708-709), and thus has some bearing on S.L.'s honesty or veracity. But the light it sheds is weak.

5

S.L.'s conduct also occurred a year before, and 10 miles away from the location of, the charged sexual assaults. Accordingly, her prior conduct is remote in time. It is also dissimilar to the charged crimes, which were either coerced (according to S.L.) or part of a longstanding relationship (according to defendant's trial testimony); in none of defendant's conflicting accounts did he assert he was paying S.L. for sex. Defendant testified, and nothing in the record indicated that the admission or exclusion of this evidence affected his decision to do so.

What is more, evidence that S.L. once loitered for prostitution runs the risk of confusing the issues of consent and credibility. (*Rioz*, *supra*, 161 Cal.App.3d at p. 919 ["[g]reat care must be taken to insure [the] exception to the general rule barring evidence of a complaining witness' prior sexual conduct . . . does not impermissibly encroach upon the rule itself and become a 'back door' for admitting otherwise inadmissible evidence"].) It also comes dangerously close to asserting—as defendant argued to the trial court—that S.L. is a liar because she once attempted to be a prostitute. (Accord, *People v. Varona* (1983) 143 Cal.App.3d 566, 569-570 ["[w]e do not . . . hold that in every rape case where the [victim] is a prostitute, evidence of that fact must be admitted to show consent"]; *People v. Steele* (1989) 210 Cal.App.3d 67, 75-76 [evidence that victim once previously had sex with a stranger properly excluded from use as impeachment evidence].) In sum, the trial court acted well within its discretion.

Defendant raises two further arguments. First, he argues that the trial court was unfairly applying a "double standard" by admitting four of his 30 prior convictions but excluding S.L.'s conduct amounting to a misdemeanor. We disagree. The court thoughtfully applied the pertinent law to each set of convictions; contrary to defendant's suggestion, there is no rule requiring absolute parity in the admission of prior convictions. Second, defendant contends that the trial court's exclusion of S.L.'s prior misconduct amounted to a limitation on his right to cross-examine her that violates his constitutional right to confront witnesses. Although the right to confrontation can be implicated if "'the prohibited cross-examination would have produced a significantly different impression of the witness's credibility'" (*People v. Capistrano* (2014)

6

59 Cal.4th 830, 866), the "'""application of the ordinary rules of evidence generally does not impermissibly infringe upon"'"" that right (*People v. Casares* (2016) 62 Cal.4th 808, 830).  As we explain above, the court here properly applied Evidence Code section 352.  Moreover, the court gave defendant ample leeway to cross-examine S.L. on the inconsistencies in her accounts of what happened as she recounted the assault to the police, the forensic nurse who examined her, and to the jury at trial.  Defendant's rights to confrontation were not violated.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:


_____, P.J.
BOREN


_____, J.
ASHMANN-GERST