# IN THE SUPREME COURT OF CALIFORNIA

JANE S.D. DOE et al.,
Petitioners,

v.

THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
MOUNTAIN VIEW SCHOOL DISTRICT,
Real Party in Interest.

S272166

Second Appellate District, Division Two
B313874

Los Angeles County Superior Court
BC712514

July 27, 2023

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

JANE S.D. DOE v. SUPERIOR COURT

S272166

Opinion of the Court by Guerrero, C. J.

Jane S.D. Doe (plaintiff) sued the Mountain View School District (real party in interest, hereinafter the District) to recover for sexual abuse committed by her fourth-grade teacher when she was eight years old. The District, seeking to undermine plaintiff's claim for emotional distress damages resulting from the teacher's conduct, planned to introduce evidence that plaintiff had been molested a few years later by another person — and that this subsequent molestation caused at least some of plaintiff's emotional distress injuries and related damages.

Evidence Code section 1106, subdivision (a), generally protects — or shields — civil litigants who allege "sexual harassment, sexual assault, or sexual battery" by barring evidence of a "plaintiff's sexual conduct . . . to prove consent by the plaintiff or the *absence of injury* to the plaintiff." (Italics added.)[1] Yet subdivision (e) of section 1106 also specifies: "This section shall not be construed to make inadmissible any evidence offered to attack the credibility of the plaintiff as provided in Section 783." In turn, section 783, subdivision (d), provides that a trial court may allow introduction of evidence "regarding the sexual conduct of the plaintiff," so long as that evidence "is relevant pursuant to Section 780" (governing

---

[1] Subsequent statutory references are to the Evidence Code unless otherwise noted.

witness credibility, generally) and "not inadmissible pursuant to Section 352" (governing a court's discretion to exclude relevant evidence under certain circumstances).

Plaintiff filed a pretrial motion seeking to exclude evidence of the subsequent molestation. The trial court ruled that the challenged evidence was (1) not protected by any shield statute, and (2) relevant and admissible with regard to whether plaintiff's emotional distress was caused solely by the teacher's conduct or by a combination of his conduct and the subsequent molestation. In light of that ruling, both parties referred to the subsequent molestation in their opening statements to the jury. We then stayed the trial and directed the Court of Appeal to issue an order to show cause. The appellate court obtained briefing, held oral argument, and published an opinion finding the evidence regarding the subsequent molestation admissible. (*Doe v. Superior Court* (2021) 71 Cal.App.5th 227 (*Doe*).) We granted review of that decision to address the interrelationship of the statutory provisions and the admissibility of the challenged evidence.

We conclude that section 1106, subdivision (e), *may* permit admission of evidence that would otherwise be excluded under section 1106, subdivision (a). But such admissibility is subject to the procedures set out in section 783 and especially careful review and scrutiny under section 352. As we shall explain, the Legislature devised section 783 to protect against unwarranted intrusion into the private life of a plaintiff who sues for sexual assault, by identifying and circumscribing evidence that may be admitted to attack such a person's credibility. Correspondingly, section 352, as applied in this setting, requires special informed review and scrutiny, designed to protect such a plaintiff's privacy rights and to limit the introduction of evidence

concerning such a person's sexual conduct. And yet, these crucial protections appear not to have been applied in this case. Accordingly, we direct the Court of Appeal to remand the matter to the trial court for further proceedings. Thereafter, the trial court will need to determine whether, assuming the jury remains empaneled, trial with that jury should proceed.

## I. FACTS AND PROCEDURE

### A. Molestation of Plaintiff by Her Teacher in 2009–2010

Plaintiff is one of six former students suing the District and its former employee, plaintiff's teacher, Joseph Baldenebro, concerning sexual abuse committed by Baldenebro. A first amended complaint, filed in October 2020, alleges Baldenebro is "currently in the custody of the California Department of Corrections." The complaint asserts negligence based on the District's hiring and retention of Baldenebro; its supervision of him; its failure to warn, train, and educate against his abuse; and its failure to report his abuse. The complaint also alleges sexual harassment against the District and Baldenebro. (Civ. Code, § 51.9.) Regarding plaintiff, who was born in May 2001, the complaint alleges Baldenebro "molested [her] on multiple occasions" in 2009–2010. Although the complaint asserts generally that each minor victim was "molested" by Baldenebro between 2002 and 2017, the complaint further alleges much more graphic conduct as to plaintiff in particular. The complaint contends she has suffered "extensive physical, psychological and emotional damages," which she eventually (in 2016) "began to discover . . . were caused by the childhood sexual harassment" by Baldenebro.

### B. Discovery Revealing That in 2013 Plaintiff Suffered a Subsequent Sexual Molestation by a "Teenaged Family Friend"

Through discovery, the District learned that approximately three years after the original abuse by Baldenebro, plaintiff suffered "another sexual incident" in 2013, perpetrated by a "teenaged family friend." Nothing in the record sheds light on the nature or extent of the 2013 incident.

### C. Pretrial Rulings Regarding Admissibility of Evidence Concerning the 2013 Molestation

In May 2021, plaintiff filed a motion in limine invoking sections 1106 and 352 as a shield against admission of evidence concerning the 2013 molestation. At a pretrial hearing in mid-July 2021, the trial court raised the applicability of "section 782" which, along with corresponding section 1103, governs the admissibility of evidence regarding "sexual conduct" and related procedures to attack the "credibility of the complaining witness" in *criminal* cases. Clearly, the trial court meant to refer to section 783, which, along with corresponding section 1106, governs admissibility of evidence concerning "sexual conduct" and related procedures used to attack the "credibility of the plaintiff" in *civil* cases. (Regarding the interrelationship and background of these four key statutes, see pt. II., *post*.) The trial court expressed doubt whether "section 782" governs admission of the 2013 molestation because, the court asserted, that statute "[t]ypically . . . relates to *voluntary* sexual activity of the victim." But "just to be on the safe side," the court asked the District to

4

submit a motion seeking to introduce the evidence under "section 782."[2]

The District filed an application as directed, arguing that "section 782" did not govern because "[t]his action is not a criminal prosecution." The District also asserted it did not plan to use the 2013 molestation evidence to impeach the plaintiff, yet sought to introduce the evidence "out of an abundance of caution." In sealed filings it set out what it knew about the 2013 molestation and included a declaration concerning the relevance of that evidence: "to establish an alternative explanation for [plaintiff's] psychological harm and condition." Specifically, the District asserted, whereas plaintiff "alleges past and future emotional distress and psychological injuries from the Baldenebro molestation" in 2009–2010, "[t]he 2013 incident . . . may be the cause of harm from 2013 forward."

After considering this additional briefing, the trial court held a further hearing during jury selection, just a few days before the parties were set to make opening statements. Counsel for the District acknowledged that its briefing concerning the court's requested motion had been "a little ambiguous," and sought to "clarify" that it *did indeed* seek to question plaintiff concerning "concurrent cause[s] of harm."

---

[2]    Thereafter the trial court continued to refer to section *782*, when the court should have referenced and invoked section *783*. The District, in its subsequent briefing and arguments, noted the inapplicability of section 782 to civil actions, yet failed to expressly acknowledge that section 783 applied. The Court of Appeal below acknowledged the trial court's (and parties') erroneous invocation of sections 1103 and 782, but viewed the court and the parties as, in practical effect, having addressed and applied sections 1106 and 783. (See *Doe, supra*, 71 Cal.App.5th at pp. 235, 241.)

Counsel explained that he intended to ask the plaintiff if she was "the victim of a sexual abuse episode" in 2013 but would "not examine her about the details or the specifics of the incident." Counsel acknowledged plaintiff's "right to privacy," but argued that the District has a right "to show alternative causes of that harm."

The trial court, still erroneously referring to sections 1103 and 782 instead of sections 1106 and 783, ruled that the evidence of the 2013 molestation fell outside the scope of any shield statute. The court reasoned that the statutory term "sexual conduct" (which is used in all four statutes) should be understood to cover only *voluntary* conduct or a "willingness to engage in" such conduct. The court determined the 2013 molestation necessarily reflects "involuntary" conduct, falling outside those sections, because plaintiff was an unwilling "victim of inappropriate sexual behavior." Hence, the court held, the "2013 . . . incident is not . . . sexual conduct within the meaning of" the shield statutes.

Having so concluded, the trial court next proceeded to consider the admissibility of evidence concerning the 2013 molestation under section 780, which as previously noted sets out grounds the finder of fact may rely upon to assess witness credibility; and under section 352, which prescribes a balancing test for relevant evidence that may create a substantial danger of undue prejudice if admitted.

Regarding witness credibility, the court addressed the District's argument that the jury should learn about the subsequent molestation insofar as it relates to plaintiff's emotional distress damages. In this respect, the court analogized the 2009–2010 abuse by Baldenebro and the

subsequent 2013 molestation to a situation posed when a litigant is involved in successive automobile accidents, and asserted that "if there's a subsequent auto case . . . and the plaintiff is injured and the judge excludes evidence of that, I think it would be reversible error." The court highlighted some of the issues facing plaintiff in the wake of the molestation by Baldenebro — namely, anger with her parents and "issues with boys." The court surmised that the "second incident" may have exacerbated these issues and that the District should be entitled to elicit information about them in "the most minimally invasive manner by asking [plaintiff] hopefully one single question." The court acknowledged plaintiff's "right to privacy," but found the 2013 molestation "highly and directly relevant on the defense damage case" concerning whether plaintiff's emotional distress was caused solely by Baldenebro's conduct or by a combination of his conduct and the 2013 molestation.

Turning to undue prejudice under section 352, the trial court stated it would exercise its discretion to allow the evidence concerning the 2013 molestation, reasoning that its "probative value is not substantially outweighed by the probability" that admission would cause undue delay or prejudice, confusion, or otherwise mislead the jury.

### D. Writ Proceedings and Opening Statements at Trial

Immediately after the trial court's ruling, counsel for plaintiffs petitioned the Court of Appeal for a writ of mandate ordering the lower court to exclude evidence regarding the 2013 molestation and requested a stay of the trial proceedings pending the appellate court's review. In a hearing in the trial court on that same day, the court confirmed that the District would be permitted to "mention" the 2013 molestation in its

opening statement. The Court of Appeal initially granted an immediate stay of the trial later that day, but ultimately denied the writ and dissolved the stay the following day.

On the next court day, plaintiffs' counsel advised the trial court and the District that he had filed a petition for review in this court and request for an immediate stay. Counsel confirmed that he was "not requesting a stay of this trial" from the trial court and "preserv[ed] our objection to the subsequent sexual abuse incident . . . but in light of the Court of Appeal's ruling, we will go forward and we will address that in our opening as well because of the ruling."

In the ensuing opening statements, counsel for plaintiffs told the jury that his clients would recount "inappropriate behavior" by teacher Baldenebro dating from the early 2000's until 2017. Counsel briefly described the conduct each of the six student plaintiffs had experienced with Baldenebro: inappropriate touching, kisses, being made to sit on Baldenebro's lap, and feeling a bulge in his pants. But, counsel asserted, "[U]nfortunately [plaintiff] got the worst abuse." In addition to being subjected to conduct like the others, counsel told the jury, plaintiff also was subjected to Baldenebro making her rub his penis until he ejaculated; inserting his fingers into her vagina; and inserting his penis into her mouth and ejaculating. Further, counsel asserted, Baldenebro admonished plaintiff: "If you ever tell anybody, I'll tell them that you let me do this to you."

Plaintiff's counsel eventually briefly foreshadowed the additional sexual molestation plaintiff had suffered, telling the jury: "The evidence will show that unfortunately [plaintiff] had a subsequent incident with a . . . boy" in 2013. Moreover,

counsel acknowledged, when plaintiff first reported Baldenebro's conduct to the police, she did not reveal "the entirety of the trauma that she went through." Finally, counsel impliedly acknowledged that plaintiff's psychotherapy treatment records related to the 2013 incident would not mention Baldenebro's conduct.

Thereafter, counsel for the District began his opening statement by conceding that "Baldenebro did most of the things claimed by the plaintiffs" and acknowledging, "Baldenebro caused the plaintiffs emotional distress, and as I've said from the outset, the District has already admitted it was negligent and . . . should have supervised him better." The issue before the jury, counsel for the District asserted, is the extent to which the District caused each plaintiff's harm. Counsel previewed the events that all six student plaintiffs allege occurred with respect to each of them, and the corresponding asserted emotional injuries of each. With regard to five of the six student plaintiffs, counsel generally conceded that their allegations established some level of depression and resulting psychological harm, but pointed out that in most instances *other* unrelated stressors — such as dealing with a sibling's drug abuse, a brother's death, a father's incarceration, or anxiety caused by being a new mother — contributed in some manner to each plaintiff's cumulative psychological harm.

Counsel for the District then turned to plaintiff and observed that she is "the only one who makes" more "graphic allegations." Counsel asserted that when plaintiff, at the age of 18, became aware of Baldenebro's arrest, she reported his abuse to the sheriff's department, where she was interviewed by a female deputy. At that time, counsel told the jury, plaintiff

"didn't say anything about" the more graphic allegations described by her trial counsel.

Counsel for the District next stated that plaintiff "underwent therapy from October 2016 to April 2017" but during those sessions "never mention[ed] or stat[ed] anything about Baldenebro." Moreover, counsel asserted, when plaintiff resumed therapy in April 2019, and at that time mentioned "abuse by a school teacher," she did not describe any graphic conduct like that highlighted by her counsel.

Counsel for the District told the jury that discovery showed that plaintiff stated, under oath, that she attributes her emotional distress to "the abuse and conduct [of] Baldenebro" in the "2009–2010 time frame." Counsel then addressed the evidence concerning the 2013 molestation: "[C]ompletely unrelated to this, and tragically in 2013[,] she was sexually molested and abused unrelated to . . . the school district or Baldenebro — by a family friend or relative." "[O]ur expert [psychiatrist] . . . will tell you you can't just separate them, that the mental issues she's got are *in part caused by her interaction with Baldenebro*, whatever that was, *and the completely unrelated molestation in 2013 that she's still suffering* [*from*] *separately and apart*." (Italics added.)

Counsel concluded by telling the jury that the District's psychiatrist expert interviewed plaintiff five months earlier for "three hours . . . and diagnosed [plaintiff] with posttraumatic stress disorder, PTSD. [The District's psychiatrist] believes it was caused by the unrelated 2013 sexual abuse incident and by Baldenebro. Both." And so, counsel argued, Baldenebro is indeed part of the cause of plaintiff's emotional distress, but "it's a whole other stressor going on in this life that was traumatic

and awful that she experienced unrelated to [the District] and Baldenebro."

After opening statements, four of the witnesses for the student plaintiffs and the other claimants testified. Before trial resumed the next morning, this court, acting in connection with plaintiff's then-pending petition for review, stayed further trial proceedings. Two days later, we granted the petition for review and immediately transferred the matter back to the Court of Appeal with directions to issue an order to show cause. The Court of Appeal expeditiously did so. The trial court then advised the jury that the matter had been stayed, but admonished: "You are still jurors in this case" and would be advised "when proceedings do resume and when you will be required to appear . . . for [resumption of] this trial."

### E. Proceedings in the Court of Appeal

The Court of Appeal continued our stay of trial proceedings and obtained further briefing. The District did not defend the trial court's view that the evidence failed to qualify as "sexual conduct" under what the District belatedly acknowledged as the relevant statutes, sections 1106 and 783. Instead, the District asserted the evidence is admissible to attack plaintiff's credibility under section 783.

In its opinion denying plaintiff's petition for a writ of mandate, the Court of Appeal held that the trial court erred in referring to inapplicable sections 1103 and 782 (governing criminal cases) instead of sections 1106 and 783 (governing civil cases), and more significantly, by ultimately ruling that *no* shield statute governed. The Court of Appeal explained that contrary to the trial court's understanding, the term "sexual conduct" as used in the shield statutes encompasses both a

plaintiff's voluntary conduct and sexual abuse to which a plaintiff has been involuntarily subjected; hence, admission of the evidence regarding the 2013 molestation must be analyzed under sections 1106 and 783. (*Doe*, *supra*, 71 Cal.App.5th at pp. 236–240.) The appellate court nonetheless determined that the trial court had, in essence, "conducted a hearing [under section 783] as statutorily required." (*Id*. at p. 235.) The Court of Appeal "anticipated" that plaintiff would eventually testify that all of her present emotional distress is attributable to Baldenebro and to no other cause. (*Id*. at p. 232.) The court then characterized the trial court's ultimate evidentiary ruling as ambiguous and proceeded to interpret that ruling narrowly, viewing it as "admitting the 2013 molestation *for impeachment purposes only*." (*Id*. at p. 235, italics added; see also *id*. at p. 241.)

Having construed the record and the trial court's ruling in this manner, the Court of Appeal proceeded to address the section 352 balancing inquiry. The appellate court determined that the trial court had "applied *the same section 352 analysis called for by*" sections 1106 and 783. (*Doe*, *supra*, 71 Cal.App.5th at p. 235, italics added.) Moreover, the Court of Appeal concluded, the trial court did not abuse its discretion in declining to exclude the challenged evidence under section 352. (*Doe*, at pp. 240–242.) The appellate court lifted the stay of trial proceedings and instructed the trial court to either assess any prejudice flowing from the empaneled jury's exposure to the mentioning of the 2013 incident during opening statements or to restart the trial with a new jury.

Plaintiff and the other claimants filed a second petition for review, which we granted.

## II. GENERAL AND STATUTORY BACKGROUND

In order to understand and place into perspective the key statutes at issue here — sections 1106 and 783 — we find it useful to briefly survey the history that led to them.  As shown below, by enacting these provisions, the Legislature sought to extend reforms governing *criminal* prosecution of sexual assault crimes by making corresponding reforms to the Evidence Code's treatment of *civil* suits for sexual assault or harassment.

Early California statutes and decisions concerning criminal prosecutions for rape evinced considerable solicitude toward the accused and skepticism regarding the alleged victim.[3]  Relatedly, courts permitted defendants to present evidence of a rape victim's past sexual history to refute the prosecution's charge that a sexual act was nonconsensual.[4]

---

[3]    Indeed, to prove the statutory crime of rape, the prosecution was required to establish physical resistance by a victim.  (*People v. Fleming* (1892) 94 Cal. 308, 311 [noting that the applicable statute required a showing that the victim " 'resists, but her resistance is overcome by force or violence' "].)  An early decision by this court asserted that "non-resistance" would be seen as "an invitation to [a] defendant to persist in his endeavors."  (*People v. Brown* (1874) 47 Cal. 447, 450.)  In 1980, our Legislature amended California's rape statute "to delete most references to resistance."  (*People v. Barnes* (1986) 42 Cal.3d 284, 292.)

[4]    Our opinion in *People v. Pantages* (1931) 212 Cal. 237 observed that it would be error " 'to exclude evidence which tends to show prior unchaste acts' " of an adult woman, " 'either with the defendant or with other men.' "  (*Id.* at p. 262.)  We quoted approvingly from one of our prior decisions:  " ' "This class of evidence is admissible for the purpose of tending to show the nonprobability of resistance upon the part of the prosecutrix.  For it is certainly more probable that a woman who has [had sexual

In 1981, our Legislature, apparently spurred by then-recent corresponding federal reforms,[5] amended sections 1103 and 782 to restrict the ability of a *criminal* defendant to present evidence of a sexual assault victim's past sexual history. (Stats. 1981, ch. 726, §§ 1–2, pp. 2875–2877; see generally *People v. Fontana* (2010) 49 Cal.4th 351, 362 (*Fontana*) ["The Legislature's purpose in crafting these limitations is manifest and represents a valid determination that victims of sex-related offenses deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy"].) Under section 1103 as amended, evidence of "the complaining witness' sexual conduct . . . is not admissible by the defendant in order to prove consent by the complaining witness." (§ 1103, former subd. (b)(1), renumbered as § 1103, subd. (c)(1).) And yet the

---

relations] voluntarily in the past would be much more likely to consent, than one whose past reputation was without blemish, and whose personal conduct could not truthfully be assailed." ' " (*Id*. at pp. 262–263, quoting *People v. Johnson* (1895) 106 Cal. 289, 293.)

[5] As explained in *Priest v. Rotary* (N.D.Cal. 1983) 98 F.R.D. 755, 762 (*Priest*), by 1978, "Congress became so disturbed at the treatment of rape victims that it enacted [Federal Rules of Evidence, rule] 412." The federal rule provides: "[E]vidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition" is inadmissible in proceedings "involving alleged sexual misconduct." (Fed. Rules Evid., rule 412(a)(1–2), 28 U.S.C.) Yet the federal rule recognizes exceptions applicable in both criminal and civil cases. Regarding the former, the exceptions include admission of "evidence whose exclusion would violate the defendant's constitutional rights." (*Id*., rule 412(b)(1)(C).) In civil cases, "the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." (*Id*., rule 412(b)(2).)

14

amended statute provided an exception: "This subdivision does not make inadmissible any evidence offered to attack the credibility of the complaining witness as provided in Section 782." (*Id.*, former subd. (b)(4), renumbered as § 1103, subd. (c)(5).)

Section 782, as correspondingly amended in 1981, in turn establishes procedures to be followed in criminal cases when "evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness." (*Id.*, subd. (a).) The statute calls for a written motion; an affidavit filed under seal accompanied by an offer of proof; a hearing outside the presence of any jury at which there may be questioning of the alleged crime victim; and finally, an assessment of admissibility under section 352, followed by an order specifying what evidence may be introduced by the defendant and the nature of questions permitted. (§ 782, subd. (a)(1)–(4).)

Most recently, and directly relevant here, in 1985 our Legislature enacted *civil* law reforms extending the above-described protections afforded by the criminal rape shield statutes to the civil context. (Stats. 1985, ch. 1328, § 1, p. 4654.) The legislation, Senate Bill No. 1057 (1985–1986 Reg. Sess.), added sections 1106 and 783 to the Evidence Code, which substantially track their criminal counterparts, and made corresponding amendments to the Code of Civil Procedure (placing limitations on civil discovery concerning sexual conduct)[6] and the Government Code (addressing administrative

---

[6]    See Code of Civil Procedure, former section 2036.1, amended and renumbered as section 2017.220 (authorizing, in subd. (a),

adjudications, and imposing substantially similar limitations on discovery concerning sexual conduct and on admission of such evidence).[7]

Within Senate Bill No. 1057 (1985–1986 Reg. Sess.), our Legislature set out to clarify, in uncodified section 1 of its enactment, its purpose and the policy it sought to achieve. It recounted that prior to the amendment of sections 1103 and 782, "victims in criminal prosecutions for rape . . . often ran the risk of finding their own moral characters on trial during the prosecution of their assailants" and explained: "It is the intent of the Legislature to take similar measures" as specified in those sections "in sexual harassment, sexual assault, or sexual battery cases." (Stats. 1985, ch. 1328, § 1, p. 4655.) In this regard, the Legislature declared: "The discovery of sexual aspects of complainant[s'] lives, as well as those of their past and current friends and acquaintances, has the clear potential to discourage complaints and to annoy and harass litigants. That annoyance and discomfort, as a result of defendant or respondent inquiries, is unnecessary and deplorable. Without protection against it, individuals whose intimate lives are unjustifiably and offensively intruded upon might face the 'Catch-22' of invoking their remedy only at the risk of enduring further intrusions into details of their personal lives in discovery, and in open quasi-judicial or judicial proceedings." (*Id*., pp. 4654–4655.) Finally,

---

trial courts to permit "discovery concerning the plaintiff's sexual conduct" only if the "party seeking discovery . . . establish[es] specific facts showing that there is good cause").

[7] See Government Code, former sections 11507.6 and 11513, renumbered as section 11440.40 (correspondingly limiting discovery and admission of evidence concerning a litigant's sexual conduct).

echoing the then-recent federal court decision in *Priest*, *supra*, 98 F.R.D. at page 762, the Legislature concluded: "[T]he use of evidence of a complainant's sexual behavior is more often harassing and intimidating than genuinely probative, and the potential for prejudice outweighs whatever probative value that evidence may have. Absent extraordinary circumstances, inquiry into those areas should not be permitted, either in discovery or at trial." (Stats. 1985, ch. 1328, § 1, p. 4655.)

### III. DISCUSSION

Preliminarily, we observe that the threshold issue addressed by the Court of Appeal — determining that, contrary to the trial court's understanding, the term "sexual conduct" as used in sections 1106 and 783 encompasses both a plaintiff's *voluntary* conduct and sexual abuse to which a plaintiff has been *involuntarily subjected* — is uncontested by the parties now. (*Doe*, *supra*, 71 Cal.App.5th at pp. 236–240.) The District has also abandoned its "argument that the 2013 molestation should have been admitted for all purposes." (*Id.* at p. 240.) Accordingly, as the appellate court held, admission of the evidence regarding the 2013 molestation must be analyzed under sections 1106 and 783.

As explained below, we conclude that section 1106, subdivision (e), *may* permit admission of evidence that would otherwise be excluded under section 1106, subdivision (a). But such admissibility is subject to the procedures set out in section 783, together with careful review and scrutiny under section 352. The Legislature devised section 783 to identify and circumscribe evidence that may be admitted to attack a sexual assault plaintiff's credibility. Correspondingly, section 352, as applied in this setting, requires special informed review and scrutiny designed to protect such a plaintiff's privacy rights and

limit introduction of evidence concerning that person's sexual conduct.

### A. Does Section 1106, Subdivision (e), Allow Admission of the *Same* Evidence Prohibited Under Subdivision (a) To Attack the Credibility of a Witness's Testimony as it Relates to Apportionment of Injury in the Calculation of Damages?

As noted earlier, section 1106, subdivision (a), provides generally that "[i]n any civil action alleging conduct which constitutes sexual harassment, sexual assault, or sexual battery, . . . evidence of specific instances of the plaintiff's sexual conduct . . . *is not admissible* by the defendant in order to prove consent by the plaintiff *or the absence of injury to the plaintiff . . . .*" (Italics added.) Yet the same statute's subdivision (e) states: "This section shall not be construed to make inadmissible any evidence offered to attack the credibility of the plaintiff as provided in Section 783."

In turn, section 783 lists detailed procedures to be followed "[i]n any civil action alleging conduct which constitutes sexual harassment, sexual assault, or sexual battery, if evidence of sexual conduct of the plaintiff is offered to attack credibility of the plaintiff under Section 780," which governs witness credibility generally. The procedures set out in section 783, subdivisions (a)–(c), call for a written motion, an affidavit accompanied by an offer of proof, and a hearing outside the presence of any jury at which there may be questioning of the

plaintiff.[8] Next, section 783, subdivision (d), provides: "At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the plaintiff is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court."

Viewing this scheme as adopted in 1985 as a whole and giving full effect to all of its words and parts (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190), it is clear that section 1106, subdivision (a), precludes admission of evidence concerning a plaintiff victim's sexual conduct *as substantive evidence* "in order to prove consent by the plaintiff *or the absence of injury to the plaintiff*." (Italics added; see also Black's Law Dict. (11th ed. 2019) p. 703, col. 1 [defining substantive evidence as that "offered to help establish a fact in issue"].) In spite of this, the Court of Appeal below concluded section 1106, subdivision (e), and section 783 establish procedures under which "the very

---

[8]    These parts of section 783 read: "(a) A written motion shall be made by the defendant to the court and the plaintiff's attorney stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the plaintiff proposed to be presented. [¶] (b) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated. [¶] (c) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the plaintiff regarding the offer of proof made by the defendant." The only significant difference between these provisions and the criminal statutory counterpart, section 782, is that the latter requires the affidavit to be filed and kept under seal. (See § 782, subd. (a)(2) & (5).)

same evidence" of a victim's sexual conduct may be admitted — when relevant under section 780 and necessary and appropriate under section 352 — to permit a defendant *to impeach the credibility of a plaintiff's testimony* concerning causation of injury or apportionment of damages. (*Doe*, *supra*, 71 Cal.App.5th at p. 240; see also Black's Law Dict., *supra*, at p. 700, col. 2 [defining impeachment evidence as that "used to undermine a witness's credibility"]; McDermott, Note, *California Rape Evidence Reform: An Analysis of Senate Bill 1678* (1975) 26 Hastings L.J. 1551, 1557 ["*substantive evidence* is admitted to prove or disprove any disputed fact or issue that is of consequence to the determination of the action, while *credibility evidence* is that which supports or attacks the credibility of the witness"].)

Plaintiff and amicus curiae on her behalf, Consumer Attorneys of California, assert that the Court of Appeal's interpretation renders subdivision (a) of section 1106 "a nullity" and that "[t]he statement to be impeached" pursuant to subdivision (e) of section 1106 "cannot be one that is inadmissible under" subdivision (a) of that same section.

### 1. *The appellate opinion in* Rioz *provides guidance*

In considering these objections to the appellate court's interpretation of the statutory language, we find an early Court of Appeal opinion addressing the criminal statutory counterpart, section 782, to be particularly instructive.

*People v. Rioz* (1984) 161 Cal.App.3d 905 (*Rioz*), which was decided a few months before the bill that enacted the 1985 corresponding civil legislation was first introduced, recognized the tension within the statutory scheme created by sections 1103 and 782. Significantly, the court in *Rioz*

reconciled that tension in a manner that allowed admission under section 1103, former subdivision (b)(4) (now subd. (c)(5)), and 782 of *the very same* type of consent evidence that was inadmissible as substantive evidence under section 1103, former subdivision (b)(1) (now subd. (c)(1)).

In *Rioz*, *supra*, 161 Cal.App.3d 905, it was alleged that the defendants raped the victim. The defendants asserted the victim had agreed to have sex with them for pay, and at trial sought to introduce evidence that the victim had been convicted of prostitution "as well as certain aspects of her activities as a prostitute." (*Id.* at p. 914.) The trial court excluded the evidence under what is now subdivision (c)(1) of section 1103. (*Rioz*, at p. 914.) We will quote in some detail the Court of Appeal's discussion addressing what it termed "the inherent tension" (*id.* at p. 915) between that statute and section 782.

The appellate court began by commenting: "There is necessarily a certain amount of overlap between the issues of the victim's consent in a rape or other sex offense case and the victim's credibility. Presumably, any complaining witness in a rape case will deny consent to the sexual acts complained of; to avoid the harassment which had traditionally plagued complaining witnesses in cases of this type, the Legislature excluded evidence of prior sexual activity by the complaining witness with persons other than the defendant in order to prove consent." (*Rioz*, *supra*, 161 Cal.App.3d at p. 916.) The court observed that under what is now subdivision (c)(1) of section 1103, "a defendant in a rape case cannot, based solely upon the victim's testimony and . . . presumed denial of consent, introduce evidence that [the victim] engaged in sexual activity with" one, 10, or 100 other persons, "nor that [the victim] engaged in such activity freely or for monetary compensation.

This rule properly prevents the victim of sexual assault from being . . . placed on trial." (*Rioz*, at p. 916.)

Nevertheless, the Court of Appeal in *Rioz* recognized that what is inadmissible under what is now subdivision (c)(1) of section 1103 *can* become admissible for impeachment under what is now subdivision (c)(5) of section 1103. The court reasoned: "[O]nce the defendant, in accordance with the procedural requirements of . . . section 782, makes a sworn offer of proof concerning the relevance of the sexual conduct of the complaining witness to attack her credibility, *even though it is the underlying issue of consent which is being challenged*, then the absolute protection afforded by . . . section 1103, [former] subdivision (b)(1) [now subdivision (c)(1)] *gives way* to the detailed procedural safeguards inherent in . . . section 782." (*Rioz*, *supra*, 161 Cal.App.3d at p. 916, italics omitted & added.)

The court in *Rioz* explained: "It is significant that the express provisions of . . . section 782 vest broad discretion in the trial court to weigh the defendant's proffered evidence, prior to its submission to the jury, *and to resolve the conflicting interests of the complaining witness and the defendant*. Initially, the trial court need not even hold a hearing unless it first determines that the defendant's sworn offer of proof is sufficient. Moreover, even after a hearing outside the presence of the jury *at which the complaining witness is questioned about the defendant's offer of proof*, the statute specifically reaffirms the trial court's discretion, pursuant to . . . section 352, to exclude relevant

evidence which is more prejudicial than probative." (*Rioz*, *supra*, 161 Cal.App.3d at p. 916, italics added.)[9]

The appellate court in *Rioz* concluded: "This discretion in the trial court, along with the other safeguards inherent in . . . section 782, including the requirement that the defendant tender a sworn offer of proof of the relevancy of the complaining witness' sexual conduct to attack her credibility, all operate to provide a *rational resolution of the tension* existing between" section 782 and what is now set out in subdivision (c)(5) of section 1103. (*Rioz, supra*, 161 Cal.App.3d at p. 917, italics added.) The court continued: "Such a resolution recognizes both the right of the victim to be free from unwarranted intrusion into [that person's] privacy and sexual life beyond the offense charged and the right of a defendant who makes the necessary sworn offer of proof in order to place the credibility of the

---

[9] At this point the *Rioz* court provided "[a]n example . . . to demonstrate the wisdom of this statutory framework: A defendant charged with forcible rape makes the requisite written motion, supported by a sworn affidavit, offering to prove that the complaining witness, a convicted prostitute, agreed to have sex with the defendant for money and charged him with rape to get even with him when he refused to pay her. However, not only has the complaining witness denied that the sexual activity with the defendant was [consensual], but other evidence establishes without contradiction that the complaining witness was beaten in connection with the event. Given the potentially prejudicial impact of a prostitution conviction on the victim's testimony that she did not consent, the trial court, in the exercise of its discretion, may determine that the injuries suffered by the victim are wholly inconsistent with the defendant's offer of proof and either reject the sufficiency of the offer of proof in the first instance or exclude evidence of the prostitution conviction, after a hearing, pursuant to . . . section 352." (*Rioz, supra*, 161 Cal.App.3d at pp. 916–917.)

complaining witness at issue to fully establish the proffered defense." (*Ibid.*)

Finally, the Court of Appeal in *Rioz* cautioned that "section 782 applies only when the credibility of the complaining witness is attacked. *Great care must be taken to insure that this exception to the general rule barring evidence of a complaining witness' prior sexual conduct, i.e., . . . section 1103, subdivision (b)(1)* [now (c)(1)], *does not impermissibly encroach upon the rule itself and become a 'back door' for admitting otherwise inadmissible evidence.*" (*Rioz, supra,* 161 Cal.App.3d at pp. 918–919, italics added.)

The District extracts the following lesson from *Rioz*: "Just as there is necessarily a certain amount of overlap between a criminal complainant's or a civil plaintiff's consent in a criminal or civil sexual assault case and her credibility, there is necessarily a certain amount of overlap between the issues of a civil plaintiff's [emotional distress] damages and her credibility. To be sure, there will be some overlap between [plaintiff's emotional distress] damages and her credibility. . . . Thus, once a defendant makes a sworn offer of proof concerning the relevance of the sexual conduct to attack the plaintiff's credibility," the protection afforded by section 1106, subdivision (a) " 'gives way [under the exception articulated in that section's subdivision (e)] to the detailed procedural safeguards inherent in' " section 783. (Quoting *Rioz, supra,* 161 Cal.App.3d at p. 916.)

Indeed, this is ultimately the understanding arrived at by the Court of Appeal below. The appellate court observed that corresponding key parts of the 1985 legislation — Evidence Code section 783, as well as Code of Civil Procedure 2017.220

24

(governing discovery; see *ante*, fn. 6) — each call "for a case-by-case approach that sometimes allows for the discovery and limited admissibility of a plaintiff's sexual conduct, which puts them in some 'tension' with section 1106," subdivision (a). (*Doe*, *supra*, 71 Cal.App.5th at p. 239.) The appellate court reasoned that "in cases like this one," in which a plaintiff who seeks "to recover emotional distress damages will typically need to testify to establish that the defendant's conduct has inflicted emotional distress," such "testimony *will make evidence of emotional distress involuntarily inflicted by others through sexual abuse relevant to impeach her testimony*." (*Ibid.*, italics added.) Significantly, the appellate court acknowledged, "In such cases, the *very same* evidence" that section 1106, subdivision (a) "excludes *becomes admissible* — subject to balancing under section 352 — under section 783 to impeach" the plaintiff/victim witness. (*Doe*, at pp. 239–240, italics added.)

The Court of Appeal conceded that plaintiff's restrictive view of the statutory scheme — under which the exception articulated in section 1106, subdivision (e), and section 783 would be "categorically unavailable when the proposed impeachment regards the plaintiff's consent or the absence of injury prohibited as substantive evidence under [subdivision (a) of] section 1106" — might "be one way to try to harmonize the inherent tension between sections 1106 and 783." (*Doe*, *supra*, 71 Cal.App.5th at p. 242.) But, the court concluded, that interpretation "is not one supported by the plain text of either statute: Section 1106 expressly names section 783 as an exception to its prohibitions, and section 783 looks to a case-by-case balancing of considerations under section 352." (*Ibid.*)

We agree, as recognized in *Rioz*, *supra*, 161 Cal.App.3d 905 and by the Court of Appeal below, that there is inherent

tension within the criminal (§§ 1103, 782) and civil (§§ 1106, 783) shield provisions. The tension within the criminal provisions was highlighted soon after the Legislature enacted the original version of section 782. (*Review of Selected 1974 California Legislation, Criminal Procedure* (1975) 6 Pacific L.J. 125, 265 [observing that because "the procedures enacted by section 782 may in some cases permit the trier of fact to hear evidence of the victim's sexual conduct under the procedures delineated above and for the purpose of determining *credibility*, section 782 has the effect of permitting the trier of fact to hear the same evidence which section 1103 (relating to *consent*) will normally serve to exclude"].) The Court of Appeal in *People v. Chandler* (1997) 56 Cal.App.4th 703, 708 (*Chandler*) implicitly acknowledged this tension in the course of stressing the need to "narrowly exercis[e]" and "sparingly" employ the discretion to admit evidence under the criminal provisions. More recently, we reiterated *Rioz*'s admonition concerning admission of evidence under the criminal shield statutes: "[W]e emphasize that '[g]reat care must be taken to insure that this exception to the general rule barring evidence of a complaining witness' prior sexual conduct . . . does not impermissibly encroach upon the rule itself and become a "back door" for admitting otherwise inadmissible evidence.' " (*Fontana, supra*, 49 Cal.4th at p. 363, quoting *Rioz, supra*, 161 Cal.App.3d at pp. 918–919.) Other decisions applying the discovery shield statutes (see *ante*, fn. 6), have echoed this caution in the course of warning against allowing unwarranted discovery of such evidence.[10]

---

[10] See, e.g., *Vinson v. Superior Court* (1987) 43 Cal.3d 833, 843 (*Vinson*) (quoting the Legislature's uncodified statement of intent

And yet great care does not mean that an express exception prominently articulated in the statutory scheme should not be given full effect in appropriate circumstances. We conclude that contrary to plaintiff's reading, subdivision (a) of section 1106 does not contemplate categorical exclusion of evidence concerning "other sexual conduct" when that evidence is sought to be admitted under the same section's subdivision (e) to challenge the credibility of the plaintiff as provided in section 783.[11]

> 2. *Sections 1106, subdivision (e) and 783 address overall witness credibility — not exclusively false testimony*

Plaintiff also suggests in her opening brief that evidence admissible under section 1106, subdivision (e) and section 783 should be "reserved for when the conduct being placed before the jury has bearing on credibility because it tends to call into

---

and strictly construing "good cause" for civil discovery, requiring "specific facts justifying inquiry"); *Barrenda L. v. Superior Court* (1998) 65 Cal.App.4th 794, 801 (*Barrenda L.*) (stating that "good cause" for civil discovery requires more than "[t]he mere fact that a plaintiff has initiated an action seeking damages for extreme mental and emotional distress"); *Knoettgen v. Superior Court* (1990) 224 Cal.App.3d 11, 14 (*Knoettgen*) (asserting that courts must be "vigilant" when allowing civil discovery concerning prior sexual abuse); *Mendez v. Superior Court* (1988) 206 Cal.App.3d 557, 573 (*Mendez*) (observing that emotional distress is a normal product of sexual abuse and to regularly allow discovery intruding on such privacy would violate the Legislature's intent).

[11] Plaintiff suggests this conclusion is inconsistent with the language of and the result in *Knoettgen*, *supra*, 224 Cal.App.3d 11, an early case applying the civil *discovery* shield statute (see *ante*, fns. 6 & 10). But the *Knoettgen* decision is distinguishable: It mentioned sections 1106 and 783 only in passing and did not construe or apply them.

question whether the victim is offering *false testimony*." (Italics added.) In support, plaintiff relies on *People v. Franklin* (1994) 25 Cal.App.4th 328 (*Franklin*), in which the Court of Appeal briefly addressed the criminal statutory counterpart, section 782 — and then ultimately allowed, without applying that statute, evidence that a crime victim had previously made false complaints of molestation. In her reply brief, plaintiff appears to retreat from her prior assertions, stating that she has "never argued" that the credibility exception is reserved for probing whether a victim is offering false testimony.

In any event, such a narrow reading of the statutes is not supported by the language of section 1106, subdivision (e), which allows admission of evidence to address "the credibility of the plaintiff" when the safeguards of section 783 are followed. The sections apply whenever a plaintiff's credibility *as a witness* is at issue — such as when memory or accuracy may be disputed. When evidence regarding a plaintiff's credibility concerns that person's sexual conduct, the requirements of sections 783, 780, and 352 work together to prevent admission of evidence that is unnecessarily harassing, irrelevant, or unduly prejudicial. But contrary to plaintiff's suggestion, section 783 is not addressed to "false testimony" in the form of an assertion that a witness previously made, but which has been determined to be untrue. (See *People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1456 [discussing and applying *Franklin*, *supra*, 25 Cal.App.4th 328 and holding corresponding § 782 "inapplicable" when the defense sought to use a complaining witness's "allegedly false complaints" (contrasted with the witness's prior sexual conduct) "as impeachment evidence"].)

We perceive nothing in the statutory language that purports to limit the credibility exception as plaintiff suggests.

Instead, we read the scheme as contemplating that in appropriate and limited circumstances, admission of "other sexual conduct" evidence may indeed be warranted under section 1106, subdivision (e), and section 783 for impeachment — even when that *same* evidence is inadmissible as substantive evidence under section 1106, subdivision (a) — subject, of course, to the credibility and section 352 analysis contemplated by the Legislature's scheme.

3. *Legislative history does not alter, but supports, this interpretation*

To the extent the statutory language might be deemed ambiguous in this respect, nothing in the legislative history calls into question this interpretation. A key analysis prepared by the Senate Committee on the Judiciary revealed an understanding and intent *not* to completely or categorically bar such evidence, but instead, simply to extend the Legislature's earlier reforms governing criminal prosecution of sexual assault crimes to the civil arena. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1057 (1985–1986 Reg. Sess.) as introduced Mar. 7, 1985, pp. 1–2 (hereinafter Senate Committee Analysis).) The objective was to prevent "*unjustified* inquiry into the prior conduct of sexual harassment complainants," not to foreclose all inquiry entirely. (*Id.* at p. 2, italics added.) The committee analysis described the proposed legislation, and what eventually was enacted as sections 1106 and 783, as designed to "control *unnecessary* inquiry into the sexual lives of alleged harassment victims," to provide "*some* protection" to victims who faced "*unjustified* intrusion into their personal lives," and to "curb[] such abuse." (Sen. Com. Analysis, at p. 2, italics added.) The same analysis cited and described two then-recent decisions — United States District Court Judge Thelton Henderson's opinion

in *Priest*, *supra*, 98 F.R.D. 755 and the administrative decision in *Department of Fair Employment and Housing v. Fresno Hilton Hotel* (1984) No. 84-03, FEHC Precedential Decisions 1984–1985, CEB 2, p. 1 — and characterized them as "[p]recedent for *limiting* inquiry." (Sen. Com. Analysis, at p. 2, italics added.) The committee analysis noted that, just as criminal defendants remained able to attack the credibility of an alleged victim by following specified procedures, so too would civil defendants under the proposed legislation. (*Id.* at pp. 3–4.) The analysis observed that under the existing law governing criminal cases, "specific instances of the complaining witness' sexual conduct is *generally* not admissible to prove consent" (*id.* at p. 4, italics added), and the proposed legislation "would extend this protection to" civil victims. (*Ibid.*) Nevertheless, the analysis stated, civil defendants, like criminal defendants, would be permitted to introduce such evidence to "attack the credibility of witnesses" under procedures that eventually would be enacted as section 783. (Sen. Com. Analysis, at p. 4.) It appears from this and related history materials that the Legislature viewed the 1985 legislation as limiting — but not categorically barring, nor as reserved for addressing "false testimony" — evidence concerning a plaintiff victim's sexual conduct when offered to attack the credibility of the witness's testimony.

## B. Did the Court of Appeal Properly Determine That the Trial Court Essentially Complied with Section 783?

As observed earlier, the Court of Appeal acknowledged the trial court's key errors with respect to sections 1106 and 783 — namely, its failure to focus on those statutes, instead of sections 1103 and 782, and its conclusion that, in any event, no

shield law applies here because the 2013 molestation reflects plaintiff's *involuntary* sexual conduct. Yet, the appellate court reasoned, it was "tasked with reviewing the court's ruling — not the rationale it used to get there." (*Doe*, *supra*, 71 Cal.App.5th at p. 241.) In that regard, the appellate court concluded, the trial court ultimately "*conducted a hearing as statutorily required*" under sections 1106 and 783. (*Doe*, at p. 235, italics added; see also *id*. at pp. 240–241.)[12] We do not agree with the Court of Appeal that the trial court, in essence, conducted a proper hearing under section 783.

As a preliminary matter, it is apparent from the record that the trial court, having invested considerable resources over nine days in the midst of the COVID-19 pandemic in the challenging task of selecting 12 jurors and eight alternate jurors, was understandably and indeed admirably focused on expeditiously resolving numerous pretrial matters in order to proceed with trial. But having erroneously found no shield statute to be applicable, the trial court neglected to focus on, and benefit from, the key procedural and structural protections set out in section 783.

---

[12] The Court of Appeal stated that "the trial court adhered to all but one of the specific procedural requirements" of section 783. (*Doe*, *supra*, 71 Cal.App.5th at p. 241.) Namely, the appellate court acknowledged, the trial court did not require the District to support its section 783 motion with an *affidavit* that includes an offer of proof as required by section 783, subdivision (b). Instead, as noted earlier, the District had made such an offer of proof via its sealed *declaration*, which was submitted in support of its "section 782" motion. When parties properly follow the dictates of Code of Civil Procedure section 2015.5, a declaration would equally satisfy the affidavit requirement of Evidence Code section 783.

1. *Failure to hold a hearing out of the presence of the jury, allowing questioning of plaintiff regarding the District's offer of proof*

The trial court did not hold a more robust "hearing out of the presence of the jury," at which it would "*allow the questioning of the plaintiff regarding the offer of proof made by the defendant.*" (§ 783, subd. (c), italics added.) Consequently, the record reflects no information about the nature of the 2013 molestation, how the evidence regarding that molestation compares with the evidence concerning the 2009–2010 abuse, or how plaintiff might characterize and testify regarding those events. Most significantly, such questioning of plaintiff would have been expected to address the issue of whether she will claim that 100 percent of her emotional distress damages is attributable to the 2009–2010 Baldenebro abuse and none to any other factor, including the 2013 molestation.

The Court of Appeal acknowledged that there had been no such questioning of plaintiff, but reasoned that the parties must have been aware of — and waived — that statutory right and thus were not prejudiced. (*Doe, supra,* 71 Cal.App.5th at p. 241.)[13] We disagree with the appellate court's analysis. The initial issue at the trial court's in limine hearing was the applicability of the shield law. Once the court found the shield law inapplicable, the parties had no reason or clear mechanism

---

[13]    The appellate court asserted: "There is nothing to indicate that either party was denied its statutory right to question . . . plaintiff at the hearing (§ 783, subd. (c)); because this right exists whether a hearing is conducted under section 782 or 783, the parties were aware of this right when the court erroneously invoked section 782, yet opted not to question plaintiff." (*Doe, supra,* 71 Cal.App.5th at p. 241.)

to invoke their right to question plaintiff under that law. The Court of Appeal erred in construing their failure to do so as a waiver. Moreover, it is not apparent why the parties would have waived such an opportunity to flesh out the record. Nor is it evident why the trial court failed to prompt the parties to take advantage of the statutory procedure in order to achieve clarity in these crucial respects. But precisely because there was no such elucidation on the record, the Court of Appeal found itself forced to fill the gaps: The appellate court found it necessary to *assume* that in fact plaintiff will testify that 100 percent of her emotional distress damages is attributable to the 2009–2010 Baldenebro abuse and none to any other factor, including the 2013 molestation. (*Doe*, at p. 232.)

2. *Failure to make an order stating what evidence may be introduced by the District and the nature of the questions to be permitted*

The trial court also failed to properly undertake to "make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted," which in turn would have allowed the District to later "offer evidence pursuant to the order of the court." (§ 783, subd. (d).) Consequently, the record reflects no understanding between the court and the parties about the governing constraints on what evidence may be introduced and what questions may be asked regarding that evidence. Again, the Court of Appeal found itself forced to address one of the consequences of this void by characterizing the trial court's ruling as ambiguous and then by interpreting it "as admitting evidence of the 2013 molestation *solely for purposes of impeaching . . . plaintiff*" regarding damages. (*Doe, supra*, 71 Cal.App.5th at p. 241, italics added; see also *id.* at p. 235.)

The record and briefing reflect a related problem flowing from the trial court's failure to pin down what evidence may be introduced and what questions may be asked regarding the evidence concerning the 2013 molestation. These omissions in turn allowed the District to repeatedly change its legal reasoning supporting relevance and admission of that evidence. In the absence of any structured focusing and narrowing, the District's legal arguments throughout this litigation have been an evolving target: (1) In the trial court, the District initially asserted that it had no plan "to use the 2013 molestation evidence to 'attack the credibility' of [plaintiff]" for impeachment purposes. Still, the District maintained, that molestation evidence is relevant "to establish an alternative explanation for [plaintiff's] psychological harm and condition," and "[t]he 2013 incident . . . may be the cause of harm from 2013 forward." (2) In the hearing on its "section 782" motion, the District sought to clarify that it did indeed seek to question plaintiff in order to impeach her *anticipated* testimony concerning "concurrent cause[s] of harm." But, counsel for the District assured the trial court, he intended to ask plaintiff simply if she was "the victim of a sexual abuse episode" in 2013 — and no more. (3) The trial court apparently understood the District as seeking to admit evidence concerning plaintiff's 2013 molestation as relevant concerning only damages and via a single minimally invasive question. And yet the District's opening statement before the jury was much more expansive, encouraging the panel to use the evidence of the 2013 molestation to question the credibility of petitioner's description of the specific abuse by Baldenebro in 2009–2010. (4) Now, further expanding on the theme suggested in its opening statement to the jury, in its answer brief filed in this court, the District explains that it seeks to attack plaintiff's

credibility by additionally arguing that the 2013 molestation caused her "chronic PTSD" and that this in turn has led plaintiff to exaggerate her claims about what Baldenebro did to her. In this regard, the District argues: "If what [plaintiff] claims happened with Baldenebro did not actually happen because the 2013 trauma caused her to misremember or unintentionally exaggerate the details, then her damages for what may actually have occurred would be less." In other words, the District now asserts, the "evidence of [plaintiff's] 2013 trauma *is relevant to her credibility because it significantly affects her capacity to recollect what happened with Baldenebro and likely distorted her memories*." (Italics added.)

Although, as noted, the Court of Appeal characterized the trial court as allowing the evidence for "impeachment purposes only" (*Doe*, *supra*, 71 Cal.App.5th at p. 235; see also *id.* at p. 241), the record before the trial court gives no indication that it had in mind, and weighed or considered, the District's evolved and expansive understanding of the relevance and use of the 2013 molestation for any such impeachment.

Had the trial court thoroughly followed the procedures set out in section 783, subdivision (c), and then issued an order as contemplated by subdivision (d), specifying what evidence may be introduced by the District and the nature of permissible questions, the District would have been constrained to proceed accordingly. But in the absence of clear guardrails, the District has substantially augmented its legal theories concerning the scope and nature of its proposed impeachment as the litigation has continued. At the same time, plaintiff was left in danger of what the statute was designed to avoid — unjustified and uncircumscribed intrusion into her privacy in the immediate presence of the jury.

For these reasons, we disagree with the Court of Appeal's conclusion that the trial court essentially undertook a proper inquiry and analysis "as statutorily required" (*Doe*, *supra*, 71 Cal.App.5th at p. 235) under sections 1106 and 783. We must direct the appellate court to remand for such a hearing.

## C. Should We Nevertheless Affirm the Trial Court's Finding That the Challenged Evidence Is Admissible Under Section 352?

The District urges us to uphold the Court of Appeal's determination that the trial court ultimately properly exercised its discretion under section 352. We decline to do so for three reasons.

First, as indicated above, the record was not developed in accordance with the procedures contemplated by sections 1106 and 783. The Court of Appeal found it necessary to fill gaps by making key assumptions about plaintiff's anticipated testimony and the scope of the trial court's evidentiary ruling. We will not indulge such assumptions, and we decline to rule on the trial court's section 352 determination pending further proceedings on remand.

Second, and somewhat related to the above-described record problem, the District's evolved and expanded position concerning the relevance and use of the evidence regarding the 2013 molestation greatly complicates any attempt at this stage to assess the trial court's section 352 determination. As noted, the trial court does not appear to have apprehended or considered the District's newly advanced argument that evidence regarding the 2013 molestation may be used to impeach plaintiff's credibility not only with respect to her apportionment of harm related to her emotional distress, but

also with respect to her recollection and description of the specific abuse by Baldenebro. Yet in shifting theories the District has created an insurmountable problem for itself: We cannot assess the trial court's section 352 determination in relation to legal arguments that were not presented to and considered by that court.

Finally, even if we were to ignore the District's new theory of relevance concerning impeachment and instead confine ourselves (as the Court of Appeal appears to have done) to assuming that the trial court considered and approved the evidence regarding the 2013 molestation *solely for purposes of impeachment of plaintiff related exclusively to her anticipated apportionment of 100 percent of her emotional distress damages to the Baldenebro abuse*, on this record we would not be able to agree with the appellate court's affirmance of the trial court's section 352 ruling. As explained below, it appears that the trial court viewed the inquiry into prejudicial effect under section 352 as posing a mere garden-variety evidentiary question, without bearing in mind the applicable special considerations governing that inquiry in the current setting.

As we observed in *Fontana, supra*, 49 Cal.4th 351 (regarding the original rape shield statutes, §§ 1103 and 782), it is proper for a trial court to take into account, when " 'determining the amount of unfair prejudice' " under section 352, that "the policy of the [original] rape shield law [is] 'to guard against unwarranted intrusion into the victim's private life.' " (*Fontana*, at p. 370, quoting *U.S. v. One Feather* (8th Cir. 1983) 702 F.2d 737, 739.) The appellate decisions applying the criminal rape shield statutes have honored this policy by emphasizing that discovery or admission should be subject to especially careful scrutiny in order to avoid

unwarranted intrusion into a victim's private life. They have stressed that courts should sparingly and narrowly use their discretion to admit such evidence (see, e.g., *Chandler*, *supra*, 56 Cal.App.4th at p. 708) and must be careful to avoid "admitting otherwise inadmissible evidence" (*Rioz*, *supra*, 161 Cal.App.3d at p. 919).

These principles — highlighted in *Fontana*, *supra*, 49 Cal.4th 351 and embraced in the aforementioned criminal cases — operate with at least equal force when, as here, a court must apply sections 1106 and 783. As noted earlier, the Legislature enacted these statutes with an accompanying uncodified statement of intent (Stats. 1985, ch. 1328, § 1, pp. 4654–4655; set out and quoted *ante*, pt. II.), reflecting its protective view of civil victim witnesses. Of course, "An uncodified section is part of the statutory law. [Citation.] 'In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration. [Citations.] Although such statements in an uncodified section do not confer power, determine rights, or enlarge the scope of a measure, they properly may be utilized as an aid in construing a statute.' " (*Carter v. California Dept. of Veteran Affairs* (2006) 38 Cal.4th 914, 925.) Consistent with this, decisions applying the civil shield statutes in the context of discovery have quoted the Legislature's uncodified statement of intent in enacting them and, correspondingly, stressed the need to carefully circumscribe such discovery. In *Vinson*, *supra*, 43 Cal.3d 833, we viewed the Legislature's uncodified statements, including the "extraordinary circumstances" language, as "suggest[ing] that *a stronger showing of good cause* [for discovery] must be made to justify inquiry into this topic than is needed for a

general examination." (*Id.* at p. 843, fn. 8, italics added.) Subsequent Court of Appeal decisions have similarly treated this and the Legislature's related uncodified passages as an aid in construing the statutory scheme, reflecting a general admonition that courts should exercise great care and caution in considering whether to allow such discovery and avoid admitting otherwise inadmissible evidence. (*Barrenda L.*, *supra*, 65 Cal.App.4th at p. 801; *Knoettgen*, *supra*, 224 Cal.App.3d at pp. 14–15.)[14]

And yet the record does not indicate that the trial court approached its analysis concerning prejudicial effect under section 352 with the solicitude that we contemplated in *Fontana*, *supra*, 49 Cal.4th at page 370, by keeping in mind "the policy of . . . 'guard[ing] against unwarranted intrusion into the victim's private life.'" Nor does the record reflect that the trial court or the Court of Appeal conducted an appropriate section 352 analysis under the applicable civil law statutes, sections 1106 and 783.

As a general matter, section 352 is concerned with how certain evidence might skew a jury's logical and dispassionate

---

[14]    In this regard we decline to endorse certain language in *Mendez*, *supra*, 206 Cal.App.3d at pages 572–573, upon which plaintiff extensively relies. In the course of affirming a denial of civil discovery concerning sexual assault, the Court of Appeal in *Mendez* focused on the Legislature's uncodified "extraordinary circumstances" language and concluded that a "defendant must demonstrate some extraordinary circumstance attendant to [the] plaintiff's claim" before such discovery may be allowed. (*Mendez*, at p. 573.) As explained above, we view the Legislature's uncodified language not as imposing a standard or condition for discovery or admission, but as an interpretive aid in construing the statutory scheme.

consideration of evidence, or otherwise contribute confusion to or delay a trial.  In this respect, section 352 requires courts to consider, in part, whether the evidence in question might unduly prejudice the party against whom it is offered.  (See generally Simons, Cal. Evidence Manual (Dec. 2022) § 1:25 et seq. [hereinafter California Evidence Manual].)[15]

But sections 1103 and 1106 address an additional concern. In these particularly delicate circumstances, whether criminal or civil, a trial court must do more than simply weigh potential prejudice to the objecting party with the goal of insulating the jury from distraction or exposure to inflammatory evidence of limited value.  These statutes, and corresponding sections 782 and 783, focus on a different kind of prejudice:  that suffered by *complainants* who may experience harassment and intimidation related to discovery regarding — and potential introduction of evidence concerning — specific events in their private lives.

Of course, multiple interests are implicated in this context.  A defendant has a right to a fair adjudication and to counter a plaintiff's evidence.  And a complainant has a right to privacy and freedom from harassment.  Sections 782 and 783

---

[15]    As we have observed, section 352 uses the word "prejudice" " 'in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.' "  (*People v. Zapien* (1993) 4 Cal.4th 929, 958; see also *Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009 ["[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jur[ors], motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose"].)

articulate specific procedures designed to balance and protect the potentially conflicting rights of both the complainant and the defendant. These procedures require a broader section 352 inquiry compared with the garden-variety weighing contemplated under that statute in isolation. In such cases the trial court must not simply assess the potential for prejudice to the party against whom the evidence is offered, but also undertake a more probing inquiry by considering whether the discovery or adjudication process is being used to harass, intimidate, or unduly invade the privacy of the complainant. In doing so, a trial court must bear in mind its obligation to act as a gatekeeper, and to be guided by the Legislature's special statements concerning the purpose of the shield provisions: to protect a victim's right of privacy and prevent unnecessary intrusion into complainants' personal sexual lives both in civil discovery and in civil judicial proceedings. (Stats. 1985, ch. 1328, § 1, pp. 4654–4655; see also California Evidence Manual, *supra*, § 1:30 [observing that the Legislature commonly uses § 352 "to reinforce the goals of those code provisions" — such as §§ 1103 and 1106 — "which exclude relevant evidence due to some extrinsic policy"].) In this respect, when balancing the probative and prejudicial value of sexual conduct evidence, trial courts should consider allowing only limited, minimally invasive questioning — or permitting the parties to stipulate to facts concerning the sexual conduct.

In light of our understanding of section 352 as it applies in this setting, we do not agree with the Court of Appeal's conclusion that the trial court ultimately "applied the *same* section 352 analysis called for by" the pertinent shield statutes. (*Doe, supra*, 71 Cal.App.5th at p. 235, italics added.) Nor if we were to reach the issue would we be able to conclude on this

record, as the Court of Appeal did, that the trial court properly exercised its discretion in finding the evidence regarding the 2013 molestation to be admissible under section 352.

## IV. CONCLUSION

We reverse the judgment of the Court of Appeal and remand with directions that it remand to the trial court to undertake proper proceedings under Evidence Code sections 1106 and 783. If, in the course of those future proceedings, the District attempts to advance its evolved and expansive arguments regarding the relevance and use of the evidence concerning the 2013 molestation for impeachment, the trial court will have an opportunity to consider that issue as well. In any event, we expect the trial court to engage in the structured focusing and narrowing contemplated by section 783, and, if after further consideration it allows evidence concerning the 2013 molestation, to specify what evidence may be introduced and what questions may be asked, thus clarifying what may be presented to the jury. Thereafter, if the previously empaneled jury remains constituted (as we were informed at oral argument it does), the trial court will be expected to proceed as appropriate in that regard.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Jane S.D. Doe v. Superior Court

---

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 71 Cal.App.5th 227
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S272166
**Date Filed:** July 27, 2023

---

**Court:** Superior
**County:** Los Angeles
**Judge:** Mary Ann Murphy

---

**Counsel:**

Carrillo Law Firm, Luis A. Carrillo, Michael S. Carrillo, Laura M. Jimenez; The Senators (Ret.) Firm, Ronald T. Labriola; Esner, Chang & Boyer, Stuart B. Esner, Holly N. Boyer and Kevin K. Nguyen for Petitioners.

Arbogast Law and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Lann G. McIntyre, Dana Alden Fox, Gregory M. Ryan, Edward E. Ward, Jr., and Wendy S. Dowse for Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Holly N. Boyer
Esner, Chang & Boyer LLP
234 East Colorado Boulevard, Suite 975
Pasadena, CA 91101
(626) 535-9860

Lann G. McIntyre
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street, Suite 1700
San Diego, CA 92101
(619) 699-4976